**UNITED STATES of America, Plaintiff,**

v.

**Anthony James LEO et al., Defendants.**

**No. 75–CR–132.**

United States District Court, E. D. Wisconsin.

Feb. 12, 1976.

Terry E. Mitchell, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

James C. Wood, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

REYNOLDS, Chief Judge.

This case is before the Court for resolution of numerous pretrial motions brought by the defendants. The grand jury has returned a seven-count indictment in this action charging defendants, in general, with violating and conspiring to violate The Controlled Substance Act, 21 U.S.C. § 801 et seq., violating the Hobbs Act, 18 U.S.C. § 1952(a)(3), by traveling in interstate commerce to carry on unlawful activity, and with carrying firearms unlawfully during the commission of a felony in violation of 18 U.S.C. § 924(c)(2). Not each defendant is named in each count of the indictment, nor has each joined in every motion currently before the Court. For the reasons given below, the motions must be denied.

*Bill of Particulars and/or Discovery*

All defendants have moved the Court to order the Government to serve and file a bill of particulars and/or to allow discovery of Government information regarding defendants' activities outside Kenosha County. First, I will deal with that portion of the motion requesting a bill of particulars. It is defendants' position that the indictment is not sufficiently clear to permit preparation for trial or prevent surprise. The Government opposes the motion on the grounds that defendants are seeking material evidentiary in nature and thus not subject to disclosure.

 I have reviewed the indictment in this case and am satisfied that it is specific enough to avoid surprise on the part of the defendants. The allegations

of the indictment provide enough information to allow the defendants to adequately prepare for trial. Moreover, evidentiary details or the legal theory of the Government's case cannot be learned by motion for a bill of particulars. *United States v. Johnson,* 504 F.2d 622 (7th Cir. 1974); *United States v. Papia,* 399 F.Supp. 1381, 1384 (E.D.Wis.1975).

■ Next I will deal with the portion of the motion requesting discovery. In view of the Government's open file policy of voluntarily allowing discovery of all their investigative reports, defendants' motion is denied. See *United States v. Rogers,* 329 F.Supp. 327, 328 (E.D.Wis.1971).

### Disclosure of Electronic Surveillance

■ All defendants have moved the Court to order the Government to disclose whether any of the defendants have been the object of electronic surveillance. The Government represents that defendants have already been informally advised that no electronic surveillance was used. On February 2, 1976, the Government filed an appropriate affidavit pursuant to the rule in this circuit as articulated in *Korman v. United States,* 486 F.2d 926 (7th Cir. 1973), to the effect that no such surveillance was made of these defendants. Therefore, this motion is denied as moot.

### Production of Grand Jury Testimony

■■ All defendants have moved the Court to order the Government to make available to the defense a transcript of testimony given before the grand jury by witnesses the Government intends to call at trial. The proceedings before a grand jury are not subject to disclosure unless the moving party demonstrates a particularized need for such testimony. *United States v. Cerone,* 452 F.2d 274 (7th Cir. 1971), cert. denied, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972); *United States v. Moriarity,* 327 F.Supp. 1045 (E.D.Wis.1972); *United States v. Alby,* 349 F.Supp. 331 (E.D.Wis.1972); *United States v. Papia,* supra, at 1384. See also Rule 6(e), F.R.Cr.P. The requi-

site showing has not been made by these defendants who merely assert that the transcripts are necessary to allow the preparations of further motions to dismiss. The Government has represented that it will follow the rule in this district set down in *United States v. Cullen,* 305 F.Supp. 695 (E.D.Wis.1969), and make available twenty-four hours prior to trial the testimony of grand jury witnesses who the prosecution will call in their case in chief. No circumstances appear which would justify the production of these transcripts at an earlier time. Therefore, defendants' motion must be denied.

### Discovery and Production

All defendants have filed with the Court a generalized motion requesting that the Government be ordered to produce for discovery nine separate items or categories of evidence. Eight of these requests appear to be discoverable under Rule 16(a)(1), F.R.Cr.P., and the Government has represented that this evidence, if it exists, either has been produced or will be as soon as it becomes available. Thus, with respect to the first eight requests enumerated in defendants' motion, the need to grant the motion is obviated.

Defendants' ninth request is for a copy of a teletype communication received by the Drug Enforcement Administration office in Milwaukee from the Miami Regional office concerning these defendants, as well as the names and addresses of Government informants and the basis used by the Government for several of the allegations set forth in the indictment. The Government has objected to this request on the ground that disclosure would compromise the confidentiality of its informants and agents as well as jeopardize their safety.

■ Behind the general rule that the identity of informers need not be disclosed is the public policy of the promotion of effective law enforcement. *Firo v. United States,* 340 F.2d 597 (5th Cir. 1965), cert. denied, 381 U.S. 929, 85 S.Ct. 1568, 14 L.Ed.2d 687; *United*

*States v. Hanna,* 341 F.2d 906 (6th Cir. 1965). These are, however, circumstances where such discovery is justified, such as prior disclosure to one who would have cause to resent the disclosure, actions by the informant which played a material role in bringing about a defendant's allegedly unlawful conduct, or other facts which imply that the informant will be a material prosecution witness. *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 659 (1957). In deciding such questions, there are no absolute rules; the particular circumstances of each case control and must dictate the results. *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964); *Roviaro v. United States, supra,* at 62, 77 S.Ct. 623.

In the instant case defendants' naked requests include no facts which would bring them within any of the recognized exceptions to the general rule articulated above. See generally, 8 Wigmore, Evidence § 2374, at 765–769 (McNaughton rev. 1961). Nor does the requested information come within Rule 16(a)(1) as information to which defendants are otherwise to be given access.

█ The teletype defendants request appears to be exactly the type of communication "* * * made by * * * government agents in connection with the investigation or prosecution of the case * * *" which Rule 16(a)(2), F.R. Cr.P., specifically states is *not* subject to disclosure. Moreover, at this stage of the proceedings the representation that an informant's identity and safety might be jeopardized if the teletype were produced is also sufficient grounds for nondisclosure. See, *Bowman Dairy Co. v. United States,* 341 U.S. 214, 221, 71 S.Ct. 675, 95 L.Ed. 879 (1951). Thus, examination of all the facts and circumstances of this case discloses nothing to indicate a particularized exception to the general rule, or that defendants will be deprived of any fundamental right in the absence of a favorable ruling. I find that disclosure would be unwarranted, and the motion must therefore be denied.

*Suppression*

Five different motions to suppress certain evidence have been filed on behalf of some or all of the defendants. Evidentiary hearings are requested. In order to rule on these motions, the factual situation leading up to the defendants' arrest and the seizures of evidence complained of must be set forth at some length.

According to a certified copy of a transcript of proceedings had before the Honorable Burton Scott, County Judge in Kenosha County, Wisconsin, the facts surrounding the arrests and seizures in question are substantially as follows. Agents of the Department of Justice, Drug Enforcement Administration in Milwaukee, received a teletype communication from the Miami Regional office of the Drug Enforcement Administration to the effect that two known narcotic smugglers known to the Miami office would by flying from Miami to Chicago and then traveling to Kenosha, Wisconsin. The teletype also said that before flying to Chicago, the two persons had made arrangements to transport more than 1,000 pounds of marijuana packaged in seventeen green sea bags in an unknown vehicle via an overland route. A description of the people was also included in the communication.

As the result of the teletype, Milwaukee agents established surveillance at Chicago's O'Hare International Airport. One of the people described was observed disembarking from a flight which originated in Florida. Agents followed him as he rented a car and drove to a residence in Salem, Wisconsin. He entered the premises, and a short time later vehicles were observed coming to and going from the residence. A late model motor home was also observed parked near the residence. The motor home left the residence and was followed by some of the agents as it went to the Bristol Hotel in Bristol, Wisconsin. The driver picked up an unknown male and returned to the residence. A short time later two males left the residence, one

getting into the motor home and the other into an automobile. Surveillance was maintained on both vehicles as they were driven around the area in what was described as a "surreptitious manner." (Transcript, p. 7.) While tailing these two vehicles, agents were notified via two-way radio that other agents still maintaining surveillance on the residence had observed a red van arrive, and that two individuals had proceeded to load large, dark-colored sacks into the rear of the van. They were advised a short time later that the van was leaving the residence, and they moved to intercept the van. They accomplished the interception and asked the occupants to step outside. When the passenger door was opened, agents noticed a heavy odor of marijuana and clearly saw several large green-brown sacks in the van. One of the bags was subsequently opened and was found to contain what was known to the agent to be marijuana. Defendants Dielmann and Schmitz, who were the individuals in the van, were then placed under arrest. Agents then returned to the residence and secured it pending application for a search warrant. To secure the premises, agents entered the house to determine if anyone was present. Persons found there were kept in custody, and no one was permitted to enter or leave. Prior to the entry into the residence to secure it, surveillance officers had observed individuals carrying firearms while entering and leaving. In the course of securing the premises, marijuana was observed in plain view on the kitchen table and in the basement, but no items were seized before a search warrant was obtained. Surveillance of the motor home was maintained also, but it was not entered.

Based upon the testimony as set forth above, plus the agents' representation that because of past dealings with the Miami office it was his experience that information they provided was reliable, the state court issued search warrants for the motor home and the residence. These premises were searched and evidence was seized. Additionally, it appears that the driver of the motor home, who had apparently abandoned that vehicle and joined his companion in the automobile, was arrested with the driver of the automobile, and additional evidence was seized from the passenger compartment.

Without detailing the exact language of defendants' suppression motions, defendants have argued that agents lacked a warrant or probable cause to seize the evidence from the red van, that the facts presented to Judge Scott were an insufficient basis upon which to find probable cause and issue warrants, that agents lacked probable cause to search the passenger compartment of the automobile, that information supplied to Scott gained from observations made while securing the residence in Salem were illegally obtained and therefore could not be used to support the issuance of a warrant, and that the actual teletype received from Miami contained hearsay and was not introduced before Judge Scott. Defendants have not favored the Court with affidavits or briefs on the matter.

■ This Court finds no merit in any of defendants' claims. The information received from Miami need not independently have been adequate to find "probable cause" to make an arrest or support a search warrant, since it was totally sufficient to give the agents "reasonable cause" to stop the red van. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Once the red van was stopped and the agents observed the bags and odor of marijuana, they had probable cause to arrest the occupants of the van and seize the evidence in plain view. Armed with this information, lawfully obtained, probable cause existed for the subsequent issuance of the search warrants. The motions to suppress must therefore be denied.

■ I have examined the transcript of the proceedings before the Honorable Burton A. Scott, Judge of the County Court of Kenosha County, on August 20, 1975, in which Special Agent Stacy testi-

fied. I find that there was sufficient evidence before Judge Scott for him to find probable cause for the issuance of the search warrants, and therefore an evidentiary hearing is unnecessary.

*Dismissal*

■ Defendant Schmitz has moved the Court to dismiss Count V of the indictment which charges him with violating 18 U.S.C. § 1952(a)(3), on the ground that Schmitz was at all relevant times a resident of Kenosha County, Wisconsin. The motion is not supported by affidavit, brief, or other material. The Court fails to see how a person's residence bears materially on whether he traveled in interstate and foreign commerce during a given period. Thus, the point being raised by the said defendant is wholly without merit, and the motion must be denied.

■ Defendant Schmitz's further motion to strike the words "and foreign commerce" from Count V is also denied. The language of the indictment merely duplicates the statutory language of 18 U.S.C. § 1952(a)(3) and sets forth how the grand jury believes the accused came within that language.

*Dismissal or Election*

■ All defendants have moved the Court to dismiss Counts I, II, and III of the indictment or, in the alternative, to have the Government elect between those same counts on the grounds that the counts are "multiplicitous and duplicitous in that they attempt to improperly fractionalize a single cause [sic] of conduct into three counts * * *." Duplicity, strictly defined, relates to the problem of joining in a single count two or more distinct and separate offenses. *United States v. Papia*, 399 F.Supp. 1381, 1387 (E.D.Wis.1975). *Cf.*, *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942); *United States v. Battaglia*, 432 F.2d 1115 (7th Cir. 1970). Despite the wording of this motion, the Court understands it to be addressed solely to the issue of multiplicity; that

is, the charging of essentially the same offense in different counts of the indictment.

■ The Government correctly states the test for determining whether an indictment is multiplicitous: "* * * whether each count requires proof of an additional fact which the other count or counts do not." (Government's Brief, p. 3). An examination of the first three counts of the indictment reveals that Count I is a conspiracy count, while Counts II and III allege substantive violations of statutes prohibiting, respectively, the importation and possession with intent to distribute controlled substances. Thus each count would require the proof of additional facts not required for the other counts, and the indictment is not multiplicitous on its face. Moreover, since the principle danger of a multiplicitous indictment lies in the imposition of cumulative sentences for what is essentially a single act, *United States v. Hearod*, 499 F.2d 1003 (5th Cir. 1974); 8 Moore, Federal Practice, ¶ 8.07(1) (2d ed. 1975), the issue can more appropriately be addressed after all the Government's evidence is presented and before one or more counts go to the trier of fact for determination. Therefore, this motion must also be denied.

*Enlargement of Time, Reservation of Rights*

■ Finally, all defendants have moved the Court to extend the time for the filing of pretrial motions on the ground that all material they consider relevant has not been made available to them. In light of the Government's representation that it will continue to provide defendants with access to the entire investigative file, it is unnecessary to enter the formal order defendants request. The Court will entertain any further matters relevant to this case as the interests of justice require.

It is therefore ordered that defendants' pretrial motions be and they hereby are denied.