HARRELL, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 78–181–CR. Submitted on briefs November 21, 1978.
—Decided March 29, 1979.*
(Also reported in 277 N.W.2d 462.)

† Petition to review denied.

548

550

For the plaintiff in error, the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender, with whom on the brief was *Mark Lukoff,* first assistant state public defender.

For the defendant in error, the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with whom in the brief was *Kirbie Knutson,* assistant attorney general.

Before Decker, C.J., Cannon, P.J., and Robert W. Hansen, Reserve Judge.

DECKER, C.J.   The undisputed facts are that the defendant pointed a gun at the victim as she unlocked the lobby door to the apartment building in which she resided and ordered her to walk to the basement. At a point under the stairs, while pointing the gun at her head, he ordered her to remove her clothing. After she complied, he told her to remain quiet or he would "blow [her] head off"; demanded money and received $3 from his victim; and then, without the victim's consent, had sexual intercourse with her. After the act of sexual intercourse, and while threatening to "blow [her] head off," he searched her clothing for more money. After twenty to twenty-five minutes of conversation, he completed a second act of sexual intercourse without the victim's consent with the gun at all times pointed at the victim's head. The defendant left the scene after the second act of sexual intercourse.

After trial by jury, the defendant was convicted of two counts of rape and one count of armed robbery as charged in the information. During the trial, the trial court denied the defendant's motion to dismiss one of the counts of rape. The defendant contended that the two alleged acts of intercourse constituted only one rape. The defendant's postconviction motion pursuant to sec. 974.06, Stats., contending that the conviction for two counts of rape subjected him to double jeopardy, was also denied. Writs of error were then issued.

The defendant contends that the two acts of sexual intercourse, each charged in this case as a rape, "amounted to a continuous crime, 'a unitary transaction.' " He rea-

sons that charging each act of sexual intercourse as a rape divides a single course of conduct into multiple counts of the same criminal offense and therefore violates the double jeopardy provisions of the United States and Wisconsin Constitutions. The defendant claims that the multiplicity occurred because the sexual intercourse was without the consent of the victim by use or threat of force and that all incidents occurred with the same person and on the same occasion within a period of approximately one-half hour.

The statutes in question[1] do not specifically resolve the question of the allowable unit of prosecution.[2]

## MULTIPLICITY—DOUBLE JEOPARDY

The fifth amendment double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment to the United States Constitution. *Benton v. Maryland,* 395 U.S. 784 (1969). Because the former jeopardy provisions of the United States and Wisconsin Constitutions[3] are "identical in scope and purpose," our state supreme court has accepted decisions of the United States Supreme Court, where applicable, as controlling the double jeopardy provisions of both constitutions. *Day v. State,* 76 Wis.2d 588, 591, 251 N.W.2d 811, 812–13 (1977); *State v. Calhoun,* 67 Wis.2d 204, 220, 226 N.W.2d 504, 512 (1975).

---

[1] Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years. Sec. 944.01(1), Stats. (1973).

"Sexual intercourse" requires only vulvar penetration and does not require emission. Sec. 939.22(36), Stats.

[2] The sexual assault statute has been amended since the events in question. Sec. 940.225, Stats. (1975).

[3] U.S. Const. amend. V; Wis. Const. art. I, §8.

The division of a single offense into multiple counts violates the double jeopardy provisions of the state and federal constitutions. *State v. George,* 69 Wis.2d 92, 98, 230 N.W.2d 253, 256 (1975).

Multiplicity is defined as the charging of a single offense in more than one count.[4] Multiplicity must be distinguished from duplicity, which is the joining in a single count of two or more distinct and separate offenses.[5] Multiplicity also relates to the question of merger, whether a single criminal episode which contains the elements of more than one distinct offense merges into a single offense.[6]

It is generally accurate to say that there may be a conviction for more than one offense only where (a) each is based upon different conduct, or (b) if based on the same conduct, each offense requires proof of a fact not required by the other. F. Remington and A. Joseph, *Charging, Convicting and Sentencing the Multiple Criminal Offender,* 1961 Wis. L. Rev. 528, 545.

Further authority is found in 1 *Wharton's Criminal Law and Procedure,* sec. 32, at 67–68 (Anderson ed. 1957): "[W]hen different crimes are committed, each may be prosecuted separately although all form part of one transaction or sequence of events. Crimes are different when the evidence necessary to establish one differs from the other." In discussing whether a double jeopardy prohibition would apply in such a case, Wharton states: "The prohibition against double jeopardy does

[4] *U.S. v. Free,* 574 F.2d 1221 (5th Cir. 1978); *State v. Dorsey,* 224 Kan. 152, 578 P.2d 261 (1978).

[5] *U.S. v. Pavloski,* 574 F.2d 933 (7th Cir. 1978).

[6] *U.S. v. Umentum,* 401 F. Supp. 746, 750 (E.D. Wis. 1975), *aff'd* 547 F.2d 987 (7th Cir. 1976), *cert. denied,* 430 U.S. 983 (1977).

not apply when two separate and distinct crimes are committed in the same transaction or series of related acts, even though the crimes are so closely connected in point of time that it is impossible to separate the evidence relating to them."[7]

## A. Additional Fact Test.

The most frequently applied test in Wisconsin for determining multiplicity is "whether each count requires proof of an additional fact which the other count or counts do not. *United States v. Leo* (E.D. Wis. 1976), 406 F. Supp. 1174, 1178."[8] Nevertheless, in *Blenski v. State, supra,* the court decided the issue of multiplicity on legislative intent on the facts of the case before it. "We think that a better test in a situation such *as is involved here* is to ascertain the legislative intent."[9] [Emphasis supplied.]

In *State v. Anderson,*[10] our state supreme court set forth the test for double jeopardy analogous to the additional fact test:

The books are full of statements that the offenses in order to be the same, must be the "same in law and in

[7] 1 *Wharton's Criminal Law and Procedure,* sec. 145, at 347–48 (Anderson ed. 1957).

[8] Cited with approval in *Blenski v. State,* 73 Wis.2d 685, 693–94, 245 N.W.2d 906, 911 (1976); *Austin v. State,* 86 Wis.2d 213, 224, 271 N.W.2d 668, 672 (1978).

[9] *Blenski* involved multiple counts for unauthorized use of names for the purpose of solicitation of charitable contributions without prior registration with the Department of Regulation and Licensing. The court held that because the purpose of the statute was "to insure that funds solicited from the public for charitable purposes are not diverted to other uses . . . , [i]t logically follows, therefore, that the crime of unauthorized use of names is directed at protecting the public against being misled and not protecting the person whose name is used." *Supra,* note 8 at 694–95, 245 N.W.2d at 911.

[10] 221 Wis. 78, 265 N.W. 210 (1936).

fact,"—must comprise the same act and crime. Here two distinct crimes were charged in the two actions, embezzlement of the taxes collected during one month, and embezzlement of the taxes collected in a later month. *The two offenses were the same in law but not in fact. The same act does not constitute both offenses.* The point here attempted to be made ordinarily arises where evidence of the same acts is admissible under charges of offenses under two different statutes. [Emphasis supplied.][11]

The United States Supreme Court, using the "additional fact" test, upheld the convictions of a defendant for multiple charges of violations of the Narcotics Act, 26 U.S.C. §§692, 696.[12] In so doing, the court distinguished offenses which are continuous in nature from those which can be committed *uno ictu,* with one act.[13] Relying on Wharton, *Criminal Law,* §34 n. 3 (11th ed.), the court in *Blockburger v. United States, supra,*[14] determined that "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."[15]

A concurring opinion of Judge Leventhal in *Irby v. United States*[16] is instructive. Irby was convicted of

---

[11] *Id.* at 87, 265 N.W. at 214.

[12] *Blockburger v. United States,* 284 U.S. 299, 301–02 (1932).

[13] *See also In re Snow,* 120 U.S. 274, 286 (1887).

[14] *See* note 12, *supra.*

[15] *Blockburger, supra,* at 304. Although this appeal relates to triple charges for violations of the same statutory provision, the reasoning of *Blockburger* and subsequent cases is instructive. In fact, the information in the instant case also charges the defendant with armed robbery arising from the conduct in question.

[16] 390 F.2d 432, 437 (D.C. Cir. 1967). (Leventhal, J., concurring; Bazelon, C.J., and Wright, J., dissenting.)

housebreaking and robbery. In upholding the convictions, the *Irby* majority relied on two major factors: (1) the interests sought to be protected—person versus property, and (2) the time for reflection.[17] As Judge Leventhal explained:

> If at the scene of the crime the defendant can be said to have realized that he has come to a fork in the road, and nevertheless decides to invade a different interest, then his successive intentions make him subject to cumulative punishment, and he must be treated as accepting that risk, whether he in fact knows of it or not. [Footnotes omitted.][18]

Judge Leventhal advocated the consideration of various factors when determining whether the crimes charged are multiplicitous: interests sought to be protected; purpose which animated the defendant (helping to define the defendant's criminality); and changes in the extent and direction of the defendant's criminal intention (thus relating cumulative punishments to *mens rea*). This approach is "sounder than a generalized approach that two or more consecutive punishments are proper for a single episode because criminality of the activity is established by more than one section of the code."[19]

The "additional fact" or "same evidence" test was discussed and criticized in *Whitton v. State*.[20] The *Whitton* court held that while it is a fundamental rule that a person may be punished for each distinct crime,

> [F]requently the legislature will isolate and make criminal a number of steps arising out of one transac-

---

[17] In *Irby*, after the housebreaking was completed, the defendant had not committed himself irrevocably "to rob from the person of anyone he finds there," but "[t]he choice is still his up to the moment of confrontation." *Irby, supra,* at 433–34.

[18] *Id.* at 437–38.

[19] *Id.* at 439.

[20] 479 P.2d 302 (Alaska 1970).

tion, so that a defendant may be convicted and punished for multiple offenses arising out of a single transaction. This type of legislation promoted the lawmaking body's legitimate objective of attacking a basic unitary social evil by different legal devices to the end that such evil will be entirely obliterated and all avenues of escape for offenders will be closed.[21]

The court in *Whitton* criticized not only the *Blockburger test*,[22] but also the "same transaction" test, that is, one punishment for several statutory violations arising out of a single criminal transaction.[23]

In finding that the Alaska constitution prevented the defendant from being punished for both robbery and use of a firearm during the commission of the same robbery, the *Whitton* court recognized that under the United States Supreme Court decisions on similar issues, such punishment would not be violative of the double jeopardy clause of the United States Constitution.[24]

The "same evidence" or "additional fact" test supports the convictions of the defendant in this case for two separate violations of the rape statute. Each count requires proof by additional facts of differing acts of

---

[21] *Id.* at 306.

[22] The validity of the *Blockburger* test has been recently reaffirmed by the United States Supreme Court. "The *Blockburger* test has its primary relevance in the double jeopardy context, where it is a guide for determining when two separately defined crimes constitute the 'same offense' for double jeopardy purposes." [Citation and footnote omitted.] *Simpson v. United States,* 435 U.S. 6, 11 (1978). Although we are not dealing in the present case with two separately defined crimes but rather with two counts of the same statutorily defined crime, the *Blockburger* test is nonetheless relevant in our analysis of the double jeopardy issue raised by the defendant.

[23] *Id.* at 307.

[24] *Id.* at 309–10.

sexual intercourse. This satisfies one of the Wisconsin tests described in *Blenski*.[25]

Additionally, further analysis as suggested by the *Irby* court requires the conclusion in this case that the defendant had sufficient time for reflection between the assaultive acts to again commit himself. After the first act of sexual intercourse, the defendant searched through the victim's clothing, which had been removed, to assure himself that he had successfully robbed her of all the money she possessed. Then after twenty to twenty-five minutes of conversation, including repeated threats to "blow off [her] head," and continued threatening of the victim with a gun, he again sought sexual gratification through sexual intercourse with the victim without her consent. As in cases we discuss later, a factor, although not necessarily determinative, in deciding whether successive sexual assaults are separate acts is the use or threat of force against the victim and the repeated danger which the victim faces. Clearly each act of sexual intercourse by the defendant is analytically separated by considerations of fact and time.

Traditional application of the "additional fact," "same evidence" or the "same transaction" tests establishes that the defendant was properly charged and convicted of two counts of rape.

## B. Legislative Intent.

In *Blenski, supra,* our Wisconsin Supreme Court also adopted a legislative intent test stating: "The real question is, therefore, 'what is the allowable unit of prosecution?' *Bell v. United States*, (1955) 349 U.S. 81, 75 S. Ct. 620, 99 L. Ed. 905."[26]

---

[25] *Blenski*, 73 Wis.2d at 693–94, 245 N.W.2d at 911.
[26] *Id.* at 694, 245 N.W.2d at 911.

The *Whitton* court also looked to legislative intent. Relying on the rule of lenity,[27] the court stated that: "[W]here Congress has enacted a number of statutory criminal prohibitions which a defendant may have violated in a single transaction, [and] the question is whether the multiple sentences should be imposed, doubt as to what Congress intended will be resolved against turning a single transaction into multiple offenses." The rule of lenity focuses on legislative intent.[28]

As noted in the concurring opinion in *Irby, supra,* there is generally "no ascertainable intent on cumulation of punishment in relation to any particular offense or group of offenses."[29] However, the intent of the legislature though not explicit is often obvious.[30]

The term "sexual intercourse," as used in the statute which the defendant violated, was defined as requiring "only vulvar penetration" and not emission.[31] Defendant contends that literal application of that definition could result in a rape charge for each act of penetration during an episode of sexual intercourse which was without the consent of the victim and by force and against her will. The solution offered by the defendant is reliance upon the circumstance that the victim was "under one continuing threat" during the entire period of the

---

[27] The rule of lenity was set forth by the United States Supreme Court in *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–22 (1952): "But when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite."

[28] 479 P.2d at 307–08.

[29] 390 F.2d at 436.

[30] Remington, 1961 Wis. L. Rev. at 548.

[31] Sec. 939.22 (36), Stats.

two acts of sexual intercourse; thus it constituted one act of rape as the allowable unit of prosecution.

Such alternatives present neither the threat of a dilemma nor an analysis of the ingredients of an allowable unit of prosecution. We believe analysis sustains the conclusion that the legislature intended to proscribe individual assaultive acts rather than a single assaultive course of conduct.

The weakness implicit in the defendant's contention is apparent in the fact that he makes no complaint about his conviction for armed robbery and rape although the armed robbery was accomplished "under one continuing threat" after his victim had been forced to remove her clothing. Obviously such an argument has not been made because its logic has already been rejected as we reject it here. Pursuant to the law in effect at the time of this offense a person who committed both rape and cunnilingus on the same victim could be prosecuted for each crime.[32] Similarly, sexual assaults combined with other crimes may be prosecuted as separate crimes. *State v. Isham,* 70 Wis.2d 718, 235 N.W.2d 506 (1975). (convictions for rape, sexual perversion and burglary affirmed) ; *Hough v. State,* 70 Wis.2d 807, 235 N.W.2d 534 (1975) (convictions for rape, sexual perversion and robbery sustained) ; *Mentek v. State,* 71 Wis.2d 799, 238 N.W.2d 752 (1976) (convictions for rape, sexual perversion and false imprisonment affirmed) ; *Turner v. State,* 76 Wis.

[32] Secs. 944.01 and 944.17, Stats. Although sec. 944.17 falls within the subdivision entitled "Sexual Crimes Between Adults With Consent" and would therefore at first glance appear to exclude nonconsensual acts of cunnilingus, sec. 990.001(6), Stats., provides that titles are not part of the statute. Because consent is not an element of sec. 944.17, Stats., both consensual and nonconsensual acts were included within this section. *See also Gossett v. State,* 73 Wis.2d 135, 242 N.W.2d 899 (1976). The sexual perversion statute was not applicable to married persons engaged in private consensual acts. *Mentek v. State,* 71 Wis.2d 799, 238 N.W.2d 752 (1976).

2d 1, 250 N.W.2d 706 (1977) (convictions for second degree murder, indecent behavior with a child, enticing a child for immoral purposes, and sexual perversion sustained) ; *Vogel v. State,* 138 Wis. 315, 119 N.W. 190 (1909) (successive rapes during a period of two hours constitute several distinct offenses, the entire transaction not constituting a single offense) ;[33] *Jackson v. State,* 91 Wis. 253, 64 N.W. 838 (1895) (rape and carnal knowledge).

## APPLICATION OF AUTHORITIES

Two Wisconsin cases in which multiple convictions were affirmed are applicable to this case and require the holding of this court that on the facts before it the defendant was properly convicted of two counts of rape without double jeopardy barring the multiple convictions.

The defendant in *Madison v. Nickel,*[34] was charged with four violations of a city ordinance prohibiting the selling of obscene magazines. All the magazines were sold by the defendant at the same time and place to the same person. The supreme court refused to consider the sales a single transaction for purposes of prosecution and punishment. In so doing, the supreme court concluded that each charge required an individual determination as to each magazine's obscenity.[35]

Following the *Nickel* rationale, the court upheld the convictions of a defendant for two counts of possession of a dangerous drug in *Melby v. State.*[36] The court, in refusing to accept the defendant's contention that the charges were based on a single act and constituted only one violation of a single statutory section, stated:

---

[33] *Vogel,* although supportive of the conviction in this case, is not dispositive because several defendants were involved in the successive acts of intercourse.

[34] 66 Wis.2d 71, 223 N.W.2d 865 (1974).

[35] *Id.* at 83–84, 223 N.W.2d at 872.

[36] 70 Wis.2d 368, 234 N.W.2d 634 (1975).

[E]ach substance is different and the illegality of each must be determined independently, without regard to the others. The two drugs involved are listed as separate prohibited substances under the definition of dangerous drugs. Had one type been analyzed and found to be of a lawful variety, that would not have made possession of the other lawful.[37]

The separate acts of sexual assault, rape in this case, are separately punishable. We find the rationale of *Nickel* and *Melby* compelling. Just as evidence that one magazine was not obscene or one drug not illegal would not have affected the other counts in those cases, evidence that there was consent for one act of sexual intercourse (or an insufficiency of evidence of one act of sexual intercourse) would not affect another assaultive act in the series. Although the jury could have found consent, lack of threat, lack of use of force, or insufficient evidence to convict the defendant on one count of rape, such a finding would not preclude the jury from finding the defendant guilty on the other rape charge. Each act must be separately proven by the state and separately determined by the jury.

In *Lillard v. State*,[38] upholding the defendant's convictions for two separate rapes of the same woman, the court concluded that an episode of forcible sexual intercourse interrupted by an attack upon the rapist by the first rape victim, who was chased by the rapist and repulsed, became a second rape when he returned to the victim and commenced a second act of sexual intercourse. It was concluded that either act of forcible sexual intercourse would have been rape even if the other had not occurred, as would have been the case here. The

[37] *Id.* at 381, 234 N.W.2d at 641.
[38] 528 S.W.2d 207 (Tenn. Crim. App. 1975).

*Lillard* court found two separate rapes had occurred in fact and as a matter of law.[39]

> [W]e do not agree that a man who has raped a woman once may again assault and ravish her with impunity, at another time and at another place, as was done here. An intent was formed to rape her again. The evidence of the second rape is entirely additional to that of the first. Additional orders were given to the captive female, an intent to have her again was formed and manifested and the crime committed! Certainly there was separate and additional fear, humiliation and danger to the victim.[40]

Although the two acts in the instant case took place at the same location, there was a sufficient break in conduct and time between the acts to constitute separate and distinct acts of rape.

Important here is the concern of the *Lillard* court and this court for the victim's safety. Repeated acts of forcible sexual intercourse are not to be construed as a roll of thunder,—an echo of a single sound rebounding until attenuated. One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim.

Here, as in *Lillard,* the defendant manifested his intent to further assault his victim.[41]  Consistent with

---

[39] *Id.* at 211.

[40] *Id.*

[41] Although intent is not a requisite element of sexual intercourse in Wisconsin, sec. 940.225, Stats., neither is it a requisite element under Tennessee law. Tenn. Code Ann. §39–3701 (1975) provides that "[r]ape is the unlawful Carnal Knowledge of a woman, forcibly and against her will. Carnal Knowledge is ac-

*Irby*,[42] the *Lillard* court considered the defendant's intent, manifested by his actions and words, an appropriate factor in determining the number of separate acts for which the defendant may be punished.[43]

The *Lillard* rationale was found persuasive and adopted by the Missouri Court of Appeals in *State v. Dennis*.[44] The *Dennis* court held that rape is generally "not a continuing offense, but each act of intercourse constitutes a distinct and separate offense."[45] Although the rapes in *Dennis* occurred in two separate counties some seventy miles apart, the court found more compelling factors to be the defendant's intent and actions. "But even more germane to the question than the time interval is the fact the defendant formed the intent to again assault the victim . . . and again applied the force necessary to accomplish his purpose and thereupon completed a separate and distinct act."[46]

The references to the defendant's intent in the opinions of the Tennessee, Missouri, and District of Columbia courts are not to be confused with intent as an element of the crime of rape. In Tennessee and Missouri, as in Wisconsin, intent is not an element of the crime of rape. *Redepenning v. State*, 60 Wis.2d 471, 480–81, 210 N.W.2d

---

complished by the commencement of a sexual connection, and proof of emission is not required."

[42] *See* note 17, *supra.*

[43] 528 S.W.2d at 211.

[44] 537 S.W.2d 652 (Mo. App. 1976).

[45] *Id.* at 654. The *Dennis* court in support of this proposition cited 75 C.J.S. *Rape* §4 (1952) and *Mikell v. State*, 242 Ala 298, 5 So.2d 825 (1942). The *Mikell* court held that prosecution for rape in one county was not barred by a prior acquittal on a rape charge in another county where that rape occurred a short time earlier and with the same woman.

[46] *Id.* Mo. Ann. Stat. §559.260 (Vernon), like the statutes of Tennessee and Wisconsin, does not require intent as an element of rape.

673, 678 (1973); *Brown v. State,* 59 Wis.2d 200, 214, 207 N.W.2d 602, 609 (1973). In the context of this case, and the authorities cited, when the defendant's intent is referred to it means the inference we draw in reasoning from the evidence that the defendant's episode of conduct evinced the performance and purpose of separate and distinct criminal acts.

The Oregon Court of Appeals in *State v. Steele,*[47] recently decided an issue similar to the instant case. The defendant in *Steele* was charged with two counts of sodomy in the first degree..[48] In noting that the legislative history of Oregon's sodomy statute did not indicate whether these two acts of sodomy should be merged, the court stated that while "there is no precise formula for determining legislative intent in situations such as this,"[49] the United States Supreme Court in *Bell v. United States,*[50] has indicated that courts read statutes " 'with the saving grace of common sense.' " Relying on the same rationale expressed in *Lillard, supra,* the *Steele* court concluded:

We do not believe that the convictions for oral and anal sodomy in the first degree merge as constituting but one crime. The victim was exposed to additional fear, humiliation and danger during the second sodomy. We see no reason why we should hold that a man who commits one

[47] 33 Or. App. 491, 577 P.2d 524 (1978).

[48] The defendant was also charged and convicted of robbery in the first degree, kidnapping in the second degree, and assault in the second degree. The court held that the assault conviction merged into the robbery conviction because the same act was used by the state "to establish the use-physical-force element of robbery and the cause-physical-injury element of assault," and because the interest sought to be protected by both these elements was the same. *State v. Steele,* supra, at 528.

[49] *Id.*

[50] 349 U.S. 81, 83 (1955).

sodomy may do so again and again to the same victim with impunity. [Citations omitted.][51]

We find such cases to be persuasive and adopt the rationale of *Lillard*. A person who commits multiple sexual assaults upon the same victim may be held responsible for, and punished for, each separate and distinct act.

We note that had the trial court adopted the defendant's argument that the two rapes were a "unitary transaction," it would unquestionably have prompted an argument addressed to this court that charging the defendant with one rape was a violation of due process because the charge did not afford adequate notice of which act of sexual intercourse would be the subject of the trial. If that argument was laid to rest by the circumstances, it could be contended, and probably would be, that the receipt of evidence of two acts of sexual intercourse to establish one charge of rape was violative of the defendant's right to a unanimous jury verdict because only six jurors may have found him guilty of the first act of forcible sexual intercourse and the other six jurors may have found him guilty of the second act of forcible sexual intercourse. Those arguments are interred when the episode of sexually assaultive conduct constitutes two rapes separately charged and submitted to the jury by separate verdicts as was done in this case.

These arguments are noted because they illustrate the need for this court, in a case of this kind, to steer an interpretive course which assures that the defendant's panoply of constitutional rights and their procedural implementations do not become self-defeating.

## METHODOLOGY

Multiple charges of sexual assault require a high order of prosecutorial circumspection to assure that multiple

---

[51] *Id.*

charges are neither violative of the double jeopardy and due process provisions of the United States and Wisconsin Constitutions, nor violative of the Wisconsin constitutional requirement of a unanimous jury verdict. Such multiple charges also must conform to the allowable unit of prosecution prescribed by the legislature. In addition, should two or more parties be charged as parties to a crime of sexual assault, the questions of unanimity of the jury verdict and severance of the trial to avoid prejudice that may arise in the joint trial of codefendants are exacerbated.

If multiple offenses are charged and some of the offenses are voluntarily dismissed by the prosecution or involuntarily dismissed by the court after the reception of testimony, the jury may be left in a sea of confusion with regard to the evidence that is applicable to a specific charge. The prospect of prejudice to one defendant by the conduct of his codefendant is greatly increased because of the societal revulsion at the kind of conduct involved in sexual assaults.

Multiple charges arising from sexually assaultive conduct may be particularly susceptible to a claim that the jury's view of each of the offenses charged was not unanimous.

Applying previously articulated reasons, we have concluded that the complaint in this case is not multiplicitous. Nonetheless, we believe that tests such as those previously applied do not adequately describe the judicial considerations that form the basis for our conclusion that the constitutional guarantee against double jeopardy is not invaded by the convictions in this case.

We believe that the discharge of our duty to honor legislative determination of criminal offenses and at the same time to apply the constitutional protections guaranteed to persons charged with crime, requires us to establish a more specific and understandable methodology for discharging that duty. For that reason, we under-

take to illustrate the considerations that are inherent in the traditional tests we have applied in earlier sections of this opinion.

In this case we are called upon to determine whether the defendant's course of conduct constitutes a single sexual offense or several sexual offenses. Although sexual abuse or sexual gratification may be the goal of such an assault, the course of the defendant's conduct to effectuate such a single goal is not necessarily a single offense. A single criminal goal may be effectuated by multiple criminal acts that are separate and distinct offenses.

The problem in this case and similar cases is centered in the former jeopardy provisions of the United States and Wisconsin Constitutions containing the proscription against being tried or convicted twice for the same crime. Although the problem is complicated by other constitutional and statutory provisions, including those relating to joinder, severance, multiple counts, lesser included crimes and charging as a party to a crime, the *underlying* problem remains one of double jeopardy and its common-law antecedents of *autrefois* conduct and *autrefois* acquit recently supplemented by collateral estoppel.[52]

In an unsuccessful attempt at simplification, rubrics of "same evidence" and "same transaction" have been applied to trigger the application of the double jeopardy provisions. Whatever the applicable test,[53] it has become one of the most elusive essentials of the criminal law that reaches its most ephemeral quality in physical and sexual assaults. Because it is a rubric without clearly defined ingredients or proportions, all but the simplest applications of the test to the double jeopardy clauses prosper in confusion.

---

[52] *Ashe v. Swenson,* 397 U.S. 436 (1970).

[53] In Wisconsin it is the "same evidence" test. *State v. Ramirez,* 83 Wis.2d 150, 265 N.W.2d 274 (1978).

We consider application of the "same evidence" rubric to involve questions concerning time, place, the number of victims, comparable punishment, and the intent of the defendant. Sometimes those questions have been shorthanded into a "same offense" rubric characterized by an "additional fact" test which tends to obscure the analysis and to overlook the possibility that some additional fact or facts are not always sufficient to escape double jeopardy proscriptions. In *District of Columbia v. Buckley*,[54] Justice Rutledge, in a penetrating analysis, noted that analysis of the elements of crimes under the "identical evidence" test (merely the reciprocal of the "additional fact" test) is determinative of double jeopardy application only if there is total identity. If the analysis results in exposing some evidentiary differences between crimes, a court is bound on a case-by-case basis to weigh the difference and determine whether it is material or too minor for purposes of double jeopardy proscription.

Fundamentally, the problem is cited in the court's responsibility to oversee the application of constitutional principles of double jeopardy to a legislative enactment which divides a single act or episode of criminal conduct into temporal or spatial units constituting separate crimes. Deference to the legislative authority to define crimes and prescribe punishment for them must be balanced with the constitutional proscription against double jeopardy and cruel and unusual punishment; thus, a greater and lesser included offense are the "same offense" and trial for one bars a second trial for the other.[55]

---

[54] 128 F.2d 17, 21–22, (D.C. Cir. 1942), *cert denied*, 317 U.S. 658 (1942).

[55] *Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221 (1977); *Jeffers v. United States*, 432 U.S. 137, 97 S. Ct. 2207 (1977).

We believe that the performance of the task of determining an issue of multiplicity and double jeopardy in this case is aided by discerning the elements and factors that are dispositive aids to whether an episode of sexually assaultive behavior constitutes a single offense or multiple offenses. In our analysis of reported cases, we have been able to identify the following: (1) nature of the act; (2) time; (3) place; (4) intent; (5) cumulative punishment; (6) muscular contraction; and (7) number of victims. The presence and absence of a single factor or a combination of factors other than the nature of the act is not conclusive of the issue.

1. **Nature of the Act.** This element should be considered in the context of historically proscribed acts as well as the absence of proscriptions in the past contrasted to past and present criminal statutes. In the instant case, this factor is only incidentally involved because the sexually assaultive behavior was the same kind and character in both instances. However, the concept is indirectly illustrated by the defendant's conviction of armed robbery and rape although the conduct constituting the offenses was interspersed. The defendant, of course, has not contended to the contrary. Additionally, one should consider whether the proscribed conduct with reference to one charge is distinguishable from the proscribed conduct with reference to the other charge.

2. **Time.** The greater the interval of time between acts constituting an episode of sexually assaultive behavior, the greater the likelihood of separate offenses. That the interval is merely minutes or even seconds, as with the other elements and factors discussed, cannot be a solely determinative factor. The resolution of this factor is not solved by a stopwatch approach. An episode

of sexually assaultive behavior can and usually does involve multiple invasions of the intimate parts of the victim's body. Whether such invasions are a single offense or separate offenses can sometimes be placed in perspective by the time interval between specific acts. Of all the identifiable elements and factors, the question of time more than any other circumstance seems to permeate all of the factors. It has its greatest value when it is a frame of reference for consideration of each of the other factors and elements. For example, Professor Remington has referred to the question of whether an accused's conduct constitutes a repetitive offense in terms of whether the conduct was interrupted.[56] We interpret that to be a correlation of elapsed time and the other factors and elements. It is illustrated in this case by the twenty to twenty-five minute interval between the acts of intercourse and the defendant's search of the victim's clothing for money, as well as the extended conversation between them.

3. **Place.** Place involves the dual concepts of the location where the assault occurs, as well as the intimate parts of the victim's body invaded by the sexually assaultive behavior. When the defendant moves the victim from one location to another, the likelihood of a second offense is greatly increased. The interrelation between time and place is highlighted in such a situation because the movement to another location will likely increase the time interval between assaultive behavior and thus tend to establish separate acts. Invasion of different intimate parts of the victim's body demonstrates kinds and means of sexual abuse or gratification and therefore different acts. This factor is not present in this case except that the direction to the victim to move from the lobby entrance to the dark and relatively se-

---

[56] Remington, 1961 Wis. L. Rev. at 549.

cluded stairwell and to remove her clothing indicates that armed robbery was not the defendant's only criminal goal.

4. **Intent.** The defendant's intent, as evidenced by his conduct and utterances, to sexually abuse or obtain sexual gratification from his victim may demonstrate his desire for differing and separate means or acts of abuse or gratification. The lapse of time between acts may shed further light upon the defendant's intent. Here again, the "interrupted" conduct of the defendant referred to above illustrates the formed intent of the defendant to gratify himself or abuse his victim by a second act of sexual intercourse.

5. **Cumulative Punishment.** Consideration of the cumulative punishment effect is necessary to maintain a sense of proportion between the punishment attributable to the resulting interpretation of an episode as multiple offenses and the legislatively prescribed punishment for other crimes of comparable seriousness.

6. **Muscular Contraction.** Historically, some actions have been distinguished as multiple because of the existence of two or more muscular contractions, each of which constituted an offense, e.g., successively pulling the trigger of a gun and firing several shots. While this element or factor seems particularly inappropriate to some sexual assaults, it may not be always inappropriate.

7. **Number of Victims.** In the instance of sexually assaultive behavior, it would seem almost inevitable that multiple victims will result in multiple offenses.

We believe that the elements and factors described above will aid in focusing the "same evidence," "additional fact," and "legislative intent" tests upon sexually assaultive behavior.

*By the Court.*—Judgment and order affirmed.