# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| IN RE PERSONAL RESTRAINT PETITION OF<br><br>JESSE M. WHITE,<br><br>          Petitioner. | No. 71886-0-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: December 26, 2017 |

SPEARMAN, J. — In State v. Villanueva-Gonzalez, 180 Wn.2d 975, 329 P.3d 78 (2014), the Supreme Court held that assault is a course of conduct crime. To determine if multiple assaultive acts constitute a single course of conduct, the court must consider the totality of the circumstances, including the length of time over which the acts occurred, the location, the defendant's intent, any interruptions between the acts, and if the defendant had the opportunity to reconsider. Id. at 985.

Prior to Villanueva-Gonzalez, Jesse M. White was convicted by a jury of two counts of second degree assault and his convictions were affirmed on appeal. But in light of Villanueva-Gonzalez, we now hold that White's assaultive acts were part of the same course of conduct. White's two convictions thus violate double jeopardy. We remand for the trial court to vacate one count of second degree assault and the accompanying firearm enhancement.

## FACTS

White and his girlfriend, Raina Stevens, lived together and had a child, N.W. White's drug use and erratic behavior created challenges for the family. When White went to Portland for a few days, Stevens took advantage of his absence to move out with N.W., who was then two years old.

After White returned, Stevens brought N.W. to visit him. Stevens and White discussed where N.W. would live. White's position was that N.W. should live with him full time. Stevens disagreed. Stevens told White that, if they could not reach an agreement, she would go to court. White pulled out a gun, pointed it at Stevens, and said "[N]o, that's not the way it's going to work. I'm going to fucking kill you." Verbatim Report of Proceedings (VRP) (12/7/10) at 278.

Stevens pushed N.W. off her lap and stood up from the sofa. White grabbed Stevens by the hair, threw her face down on the floor, and began hitting her. White repeatedly struck Stevens on the back of her head while telling her she was going to die. When Stevens tried to get up, White placed his hands around her neck "so [she] couldn't breathe." Id. at 284. Stevens saw the gun, which was on the floor, and reached for it. Stevens got hold of the barrel of the gun at the same time that White grabbed its handle. White tried to point the gun at Stevens and she tried to deflect the barrel away from herself.

N.W. was next to White and Stevens throughout this incident. The child was screaming. According to White, N.W. was saying "stop, stop, stop." VRP (12/9/10) at 574. As they struggled over the gun, Stevens kept telling White that

2

he was going to hurt the child. White eventually said he would let go of the gun if Stevens did. They both let go of the gun.

Stevens got up, grabbed N.W., sat on the couch, and comforted the child. White told Stevens the incident was all her fault and slapped her. He also threatened to kill Stevens, N.W., and himself if she called the police. A short time later, White took N.W. from Stevens' arms, pushed Stevens outside, and locked the door. Stevens called the police, who, after a brief chase, arrested White and recovered the child.

White was charged with one count of second degree assault with a deadly weapon for pointing the gun at Stevens and one count of second degree assault by strangulation, both with firearm enhancements.[1] A jury convicted him as charged.

In his direct appeal, White argued that the two second degree assault convictions violated double jeopardy. State v. White, 170 Wn. App. 1011, *6, 2012 WL 3568580 (2012). To address this issue, we examined the unit of prosecution set out in the second degree assault statute, former RCW 9A.36.021 (2007).[2] Id. at *7. The statute lists several alternative means by which a person may commit assault. Id. We held that each alternative means constituted a unit of prosecution. Id. Because White's convictions were based on two different

---

[1] White was also charged with and convicted of felony harassment, unlawful possession of a firearm, and reckless endangerment. These convictions are not at issue.

[2] The legislature amended RCW 9A.36.021(1)(g) in 2011 to encompass strangulation and suffocation. White, 170 Wn. App. at *6 n.1 (citing LAWS OF 2011, ch. 1 §1). The amendment is not at issue in this appeal.

3

alternatives, we held that his convictions did not violate double jeopardy. Id. (citing State v. Smith, 124 Wn. App. 417, 432, 102 P.3d 158 (2004)).

White timely filed a personal restraint petition (PRP), asserting that he received ineffective assistance of counsel on appeal because his attorney failed to present adequate argument on the double jeopardy issue. White also argued that counsel was deficient for failing to challenge the order of commitment, which included a clerical error. We ordered the clerical error corrected but otherwise dismissed the PRP.

The Washington Supreme Court granted White's petition for review and remanded the case to this court for reconsideration in light of its opinion in Villanueva-Gonzalez, 180 Wn.2d 975.

## DISCUSSION

The issue on remand is whether White's two convictions for second degree assault violate double jeopardy.[3] Whether convictions violate double jeopardy is a question of law that we review de novo. State v. Jackman, 156 Wn.2d 736, 746, 132 P.3d 136 (2006).

In Villanueva-Gonzalez, the defendant's girlfriend returned from a night out and went into their children's bedroom. Villanueva-Gonzalez, at 978. Villanueva-Gonzalez told her to get out of the bedroom. Id. When the girlfriend did not comply, he pulled her out of the room. Id. He then hit her head with his forehead, breaking her nose and causing blood to run down her face. Id.

---

[3] On remand, White makes no argument that he received ineffective assistance of counsel. It appears he has abandoned the claim.

4

Villanueva-Gonzalez grabbed his girlfriend by the neck and held her against a piece of furniture so that it was difficult for her to breathe. Id. Villanueva-Gonzalez was convicted of second degree assault based on the head butt and fourth degree assault based on strangulation. Id. at 978-79.

To determine whether these convictions violated double jeopardy, the Villanueva-Gonzalez court considered whether the legislature intended assault to be a course of conduct offense or a separate act offense. Id. at 982. The court held that the legislative intent was unclear but, applying the rule of lenity, "assault should be treated as a course of conduct crime until and unless the legislature indicates otherwise." Id. at 984. This interpretation "helps to avoid the risk of a defendant being 'convicted for every punch thrown in a fistfight. . . .'" Id. at 985 (quoting State v. Tili, 139 Wn.2d 107, 116, 985 P.2d 365 (1999)).

To determine if multiple assaultive acts are part of the same course of conduct, the Villanueva-Gonzalez court set out five factors:

> [1]-The length of time over which the assaultive acts took place,
> [2]-Whether the assaultive acts took place in the same location,
> [3]-The defendant's intent or motivation for the different assaultive acts,
> [4]-Whether the acts were uninterrupted or whether there were any intervening acts or events, and
> [5]-Whether there was an opportunity for the defendant to reconsider his or her actions.

Id. at 985. But the Villanueva-Gonzalez court cautioned against "a mechanical balancing of the various factors." Id. Whether multiple assaultive acts are part of the same course of conduct ultimately depends on the totality of the circumstances. Id.

In Villanueva-Gonzalez's case, the assaultive acts occurred in the same location over a short period of time. Id. at 986. The record gave no evidence of any interruptions or opportunity to reconsider and gave no indication that Villanueva-Gonzalez's intent was different in the different acts. Id. The court held that Villanueva-Gonzalez's actions constituted one course of conduct and, thus, his two assault convictions violated double jeopardy. Id.

In this case, White was convicted of two counts of second degree assault based on (1) pointing a gun at Stevens and saying he was going to kill her, and (2) strangling Stevens. White contends that, as in Villanueva-Gonzalez, the assaultive acts took place in a short period of time, in the same location, with the same intent, and in an unbroken series. He asserts that the acts were part of the same course of conduct. The State contends that the Villanueva-Gonzalez factors weigh against this conclusion.

The State argues that White's intent was not the same in the two charged assaults.[4] The State's position is that the two charged counts were based on different theories of assault, each with a different intent. The jury was instructed that an assault may be either "an act ...done with the intent to create in another apprehension and fear of bodily injury" or "an intentional touching or striking of another person." Resp. Br. Ex. 6 (Instruction No.3). The State asserts that the

---

[4] The State also raises an argument as to the first factor, the length of time over which the assaultive acts took place. The State asserts that the record does not establish with precision the length of time over which the acts in this case took place. The State recognizes, however, that the assaultive acts took place within a relatively short timeframe. At oral argument, the State conceded that the acts occurred within a short period of time. This factor weighs in favor of the same course of conduct.

6

first assaultive act, threatening Stevens, was intended to create apprehension. The second charged assaultive act, strangulation, was intended to inflict immediate physical harm.

We note that this position is inconsistent with that taken by the State below. At sentencing, the court considered whether the two assault convictions were the same criminal conduct for purposes of calculating White's offender score. The State's position was that the convictions scored as the same criminal conduct. As to intent, the State asserted that, while the two counts were based on different theories of assault, "both were committed with the intent to commit an assault, and it is clear that White's intent did not change over the time period in which these two crimes were committed." Reply Br. Pet. C. (State's Sentencing Memorandum at 3).

The State contends that its concession below is irrelevant because the "'same criminal conduct'" inquiry at sentencing is distinct from the "'unit of prosecution'" double jeopardy analysis. Tili, 139 Wn.2d at 119 n.5. (quoting State v. Adel, 136 Wn.2d 620, 965 P.2d 1072 (1998)). While the State is correct that generally the two inquiries are distinct, the argument misses the mark. The "unit of prosecution" inquiry for the crime of assault is not before us. That question was resolved in Villanueva-Gonzalez. Assault is a course of conduct crime. Our issue is simply whether the evidence shows that White "had a different intent or motivation" for the different assaultive acts. Villanueva-Gonzalez, at 986. And, as the State properly conceded below, he did not.

With regard to the convictions at issue here, the facts in this case show that White pointed a gun at Stevens and said he was going to kill her. He then threw her to the floor, beat her, and repeatedly told her she was going to die. Consistent with his threats to kill Stevens, White then began to strangle her.[5] At least throughout the part of the incident that resulted in the convictions challenged in this PRP, it is evident that White's intent and motivation did not change. He intended to assault Stevens and the episode as a whole was motivated by the disagreement over where N.W. would live.

We conclude that intent or motivation, the third Villanueva-Gonzalez factor, weighs in favor of the two assaultive acts being part of one course of conduct.

The State next contends the fourth Villanueva-Gonzalez factor, whether the acts were interrupted, weighs in favor of separate assaults. The State asserts that the charged assaults were separated by two intervening events: Stevens' standing up and moving away from the sofa and the uncharged assault when White threw Stevens to the floor and hit her. The State is incorrect.

The record shows one continuous struggle from the time White pointed a gun at Stevens to throwing her on the floor and beating her to the time he began to strangle her. On these facts, the State's assertion that Stevens' steps away from the sofa or the uncharged assault on the floor constituted interruptions in the assaultive acts is unpersuasive.

---

[5] The State relies on White's trial testimony that he strangled Stevens to force her to let go of the gun. This testimony was part of White's theory that he acted in self-defense after Stevens pointed the gun at him. Because the jury rejected White's theory, we accord it no weight.

The State next contends that the fifth Villanueva-Gonzalez factor, whether the defendant had opportunities to reconsider, weighs in favor of multiple assaults. The State asserts that White had opportunities to reconsider his actions before the assaults started, when he heard N.W. crying "stop," and after White and Stevens both let go of the gun. State Supp. Br. at 9-11.

These arguments are unpersuasive. With the exception of N.W.'s screaming, none of the other opportunities to reconsider suggested by the State occurred between the two charged assaults. As to N.W., Stevens testified that while White was beating her on the back of the head, N.W. was screaming. VRP (12/7/10) at 284. According to White, N.W. was saying "stop, stop, stop." VRP (12/9/10) at 574. The State asserts that because White was purportedly aware of N.W. screaming "stop," he could have considered the ramifications of what he was doing. We reject this argument. Regardless of the words N.W. screamed during the assaultive acts, the State points to no interruption or moment of calm that provided an opportunity to reconsider.

The assaultive acts in this case occurred in the same location within a short period of time. The acts occurred in a series during which White repeatedly expressed the intent to kill Stevens. There is no evidence in the record of interruptions or periods of calm that provided an opportunity for White to reconsider. We conclude that, as in Villanueva-Gonzalez, the assaultive acts in this case were part of a single course of conduct.

The State, however, asks us to balance the concern expressed in Villanueva-Gonzalez, that a defendant should not be convicted for every punch

thrown in a fistfight, with the countervailing concern that a defendant should not be allowed to take advantage of one assault to commit further assaults on the same victim. The State contends that the fistfight rationale is inapplicable here, where there were not two people throwing punches in a fight, but one perpetrator and one victim of domestic violence. In these circumstances, the State argues, the course of conduct analysis set out in Villanueva-Gonzalez allows a perpetrator a free pass because, once he has committed the first assaultive act, further assaultive acts in the same episode go unpunished.

The State relies on Tili. In that case, the defendant challenged his convictions for three counts of rape involving the same victim. Tili, 139 Wn.2d at 112. The court affirmed his convictions, stating that a perpetrator "'should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed.'" Id. at 117 (quoting Harrell v. State, 88 Wis. 2d 546, 277 N.W.2d 462, 469 (1979)).

The crime at issue in Tili, rape, is defined by the act of sexual intercourse. Id. at 116. Rape is unlike assault, a crime for which the unit of prosecution is not defined in terms of each physical act against a victim. See id.; Villanueva-Gonzalez, 180 Wn.2d at 984. The Supreme Court has held that assault is a course of conduct and we must treat it as such "until and unless the legislature indicates otherwise." Villanueva-Gonzalez, 180 Wn.2d at 984.

The acts underlying White's convictions occurred in the same place, within a short period of time, in an uninterrupted series, with the stated intent of killing

10

Stevens, and in response to Stevens' statement that she would pursue litigation if they could not agree on a parenting plan. The <u>Villanueva-Gonzalez</u> factors and the totality of the circumstances indicate that the acts were part of a singular course of conduct. White's two convictions thus violate double jeopardy. We remand to the trial court to vacate White's conviction for one count of second degree assault and the accompanying firearm enhancement.

Reversed.

WE CONCUR:

_____, J.

_____

_____, J.

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON
2017 DEC 26 AM 9:09