IN the INTEREST OF ELLIS H., a person Under the Age of 17:

STATE of Wisconsin, Petitioner-Respondent,

v.

ELLIS H., Respondent-Appellant.

Court of Appeals

*No. 03–3178. Submitted on briefs March 24, 2004.—Decided May 19, 2004.*

2004 WI App 123

(Also reported in 684 N.W.2d 157.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Brian C. Findley*, state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas L. Storm*, district attorney of Fond du Lac.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J.[1] Ellis H. argues that when he ran away from his foster home, his resultant failure to report to a social worker and his failure to show up for his scheduled community service were both incidental to his running away and must be considered one incident. Therefore, he posits, he can only be given one ten-day secured detention pursuant to WIS. STAT. § 938.355(6)(d), not three separate ten-day detentions. We agree with Ellis that para. (6)(d) requires a sanction to be meted out per incident rather than per condition violation, and that the three separate condition violations are considered as one incident. We reverse and remand with directions.

¶ 2. Beginning on May 23, 2003, Ellis ran away from his foster home placement. He returned on May 27, but took off again on May 30 and was gone until June 11. On June 14, he was placed in Shelter Care. Fifteen minutes after this placement, he ran away and was gone until June 22. He did not report for community service on June 9, despite being reminded by his social worker on June 3. He also missed an appointment with his social worker during the week of June 15.

¶ 3. As pertains to the issues in this case, Ellis' social worker filed six separate petitions alleging condition violations, as follows: (1) Ellis had unexcused

---

[1] This case was converted from a one-judge appeal to a three-judge appeal pursuant to WIS. STAT. § 809.41 (2001–02). All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

absences from school on June 3 and 4 and requested a sanction of ten days secured detention for his truancy since it violated the conditions of supervision requiring that he go to school. (2) Ellis ran away from his foster home from May 23 through May 27 and again May 30 through June 11 and from Shelter Care from June 14 through June 22. He further alleged that the events violated the condition that he obey all rules of the foster parents. He requested one ten day secured detention for these two events. (3) He alleged that Ellis had tested positive for marijuana, thereby failing the condition that he not violate the criminal law. The social worker requested a ten-day secured detention for this event. (4) Ellis did not keep the weekly appointment with him during the week of June 15 "due to him being a runaway from 6/14/03 through 6/22/03." He requested a ten-day secured detention for this occurrence as a violation of a condition. (5) Ellis had not reported for community service on June 9 "despite being reminded by his social worker on 6/03/03." This was alleged to be a condition violation and the social worker requested a ten-day secured detention. (6) Ellis had failed to maintain part-time employment on June 17. He requested a ten-day secured detention for the occurrence. Thus, the total amount of requested days of secured detention was sixty days.

¶ 4. Ellis admitted to the truancy, the running away, the dirty urinalysis and the failure to maintain part-time employment allegations. Therefore, he admitted to sanctions for forty out of the sixty alleged days. This appeal relates to the other twenty days, one set of ten days for not meeting with his social worker and a second set of ten days for not showing up for community service.

¶ 5. Before the juvenile court, it was Ellis' position that the failure to keep his appointment with the social worker and his failure to report for community service both arose out of his foster home violation (the run-away) and all had to be considered one incident. The State countered that he "could have been on the run and attended community service and met with his social worker." The State further pointed out that the meeting with the social worker and his community service obligation fell on different days. The juvenile court agreed with the State and imposed an additional twenty days of sanctions on top of the forty days meted out for the four violations, the dispositions of which Ellis had conceded. It was the juvenile court's view that juveniles are not exonerated from "strict compliance" with "each and every rule." Ellis appeals.

¶ 6. The outcome of this appeal turns on our construction of WIS. STAT. § 938.355(6)(d). Statutory interpretation is considered de novo. *State v. Aaron D.*, 214 Wis. 2d 56, 60, 571 N.W.2d 399 (Ct. App. 1997). That much is clear. But how appellate courts go about interpreting statutes is not so clear. It used to be that we looked first to the language of the statute. If the language was unambiguous on its face, we were not to resort to legislative history but rather we were to interpret the statute according to its unambiguous language. *Courtney F. v. Ramiro M.C.*, 2004 WI App 36, ¶ 13, 269 Wis. 2d 709, 676 N.W.2d 545. Only if the statute was ambiguous were we to turn to the legislative history in an attempt to resolve the ambiguity. *Id.* Recently, however, a divided supreme court has appeared in at least a few cases to reason that because our responsibility is to discover and give effect to the intent of the legislature, we should consider the legislative history in concert with the language of the statute. *See*

*id.*, ¶ 14; *see also Hubbard v. Messer*, 2003 WI 145, ¶ 9, 267 Wis. 2d 92, 673 N.W.2d 676; *Village of Lannon v. Wood-Land Contractors, Inc.*, 2003 WI 150, ¶ 13, 267 Wis. 2d 158, 672 N.W.2d 275. We are convinced, however, that whichever of the two methods is the law in Wisconsin, the result in this case is the same. We now explain that result.

¶ 7. WISCONSIN STAT. § 938.355(6)(d) provides:

> If the court finds by a preponderance of the evidence that the juvenile has violated a condition of his or her dispositional order, the court may order any of the following sanctions as a consequence for any incident in which the juvenile has violated one or more conditions of his or her dispositional order[.]

Looking at the plain meaning of the statute, we conclude that the language informs the reader that the court may order a sanction as a consequence for "any incident in which the juvenile has violated one or more conditions of his or her dispositional order." The statute therefore clearly recognizes that multiple conditions may be violated in any one incident but only allows one sanction per incident, not per condition violation. Stated another way, the statute plainly anticipates that any incident may consist of more than one condition violation, but nonetheless informs that only one of a number of available sanctions may be instituted for an incident. Therefore, to the extent that the juvenile court's bench decision can be read to say that the statute allows courts to apply a sanction for each condition violation, we respectfully disagree.

¶ 8. If we are to look at the legislative history in addition to the plain, unambiguous wording of the statute, the history supports our reading of the statute.

As Ellis cogently informs us, the previous Children's Code, WIS. STAT. ch. 48, did not include a provision for sanctions until 1987, when it was enacted as part of 1987 Wis. Act 27. Apparently reacting to criticism that the code had no "teeth," the legislature created WIS. STAT. § 48.355(6) (1987–88), stating in relevant part:

> (a) If a child who has been adjudged delinquent *violates a condition* specified in sub. (2)(b)7, the court may impose on the child one of the sanctions specified in par. (d) . . . .
>
> . . . .
>
> (d) The court may order any one of the following sanctions: (Emphasis added.)

Clearly, this language allowed a sanction for each condition violated.

¶ 9. This language remained largely unchanged until the legislature's overhaul of juvenile delinquency statutes in 1995 resulting in the present statute, WIS. STAT. § 938.355(6)(d). Plainly, the legislature meant to retain the teeth it provided to the courts in its adoption of WIS. STAT. § 48.355(6) (1987–88), while at the same time giving credence to the public policy choice that a sanction should not be perceived as punishment, but as a tool to coerce a recalcitrant child to comply with the conditions stated in the dispositional order. *See State v. B.S.*, 162 Wis. 2d 378, 393–94, 469 N.W.2d 860 (Ct. App. 1991).

¶ 10. Both on the basis of the plain language of the statute and on legislative history, we agree with Ellis that the legislature meant to establish a difference between an "incident" and a "violation of a condition" and to tie the sanction to the incident, no matter how many conditions were violated by that incident.

¶ 11. What remains to be determined is whether the running away from the foster home, the failure to report to the social worker and the failure to report for community service can be considered three separate incidents as opposed to one incident. Resolution of this issue requires us to define the term "incident" and to apply the definition to Ellis' circumstances.

¶ 12. Here is where the State hangs its hat. It posits that each was a separate incident because each involved a separate choice by Ellis made on a different date. In the State's view, the test should be whether it was impossible to violate one condition without violating the other. The State offers two hypothetical situations to support its argument. In one hypothetical, a juvenile violates both a specific no-contact order from the court and a generic condition that the juvenile follow foster home rules. The foster home has an identical no-contact order. In that circumstance, offers the State, it may not request separate sanctions for the two condition violations because it would have been impossible for the juvenile to commit one violation without violating the other. Similarly, if a juvenile has one condition where he or she may not drive without a valid license and another that he or she may not violate any criminal law and he or she drives an auto without the owner's consent, it is one incident according to the State for the same reason that it is impossible for the juvenile to have violated one condition without violating the other. In both instances, the State apparently argues, the juvenile has made only one volitional choice and therefore should suffer only one consequence. Here, the State contends, Ellis made three separate volitional choices—one to run away, two to fail to report to his social worker, and three to fail to show up for his

710

community service. Thus, he should suffer the consequences of three separate sanctions.

¶ 13. Ellis responds that the problem with the State's argument is that nowhere in the statute does the legislature say that "impossibility" is the way to interpret the confines of an incident. Because the legislature has not defined the word "incident," Ellis looks to a dictionary definition of "incident." He refers to a definition of the word contained in WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976), which he cites as "an occurrence of an action or situation felt as a separate unit of experience." Ellis then asserts that his failure to meet with his social worker and his failure to report for community service were incidental to or a consequence of his running away. The overall intent by Ellis was to run from the submission to authority, whether it was his foster parents, his social worker or the agent supervising his community service.

¶ 14. Ellis further submits that the running away from authority is a different unit of experience than his dirty urinalysis and his decision to use drugs. He says the same about his truancy and his failure to meet with his boss so as to retain his part-time job. These violations did not necessarily flow from his act of running away. Rather, each was a separate volitional act having nothing to do with his choice to run away from authority.

¶ 15. We hold that Ellis correctly defines the term "incident." As he points out, a definition of "incident" is not found in the statutes. In the absence of a statutory definition, the general rule is to construe the plain language of the statute according to common and approved usage of the words chosen by the legislature. WIS. STAT. § 990.01(1); *see also State v. Gilbert*, 115 Wis.

2d 371, 377–78, 340 N.W.2d 511 (1983). Common meaning of words may be established by using a dictionary. *Gilbert*, 115 Wis. 2d at 378. The definition of "incident" Ellis offers is in accord with those found in other dictionaries. *See* BLACK'S LAW DICTIONARY 765 (7th ed. 1999) (defining "incident" as "[a] discrete occurrence or happening"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1142 (1993) (defining "incident" as "an occurrence of an action or situation felt as a separate unit of experience"); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 966 (2d ed. 1987) (defining "incident" as "an individual occurrence or event").

¶ 16. This definition, of course, provides little insight into whether Ellis' failure to complete the community service requirement during his second runaway period and to meet with his social worker during his third runaway period constitute a single "incident." For that we have very little guidance and therefore turn to how courts have viewed similar terms in other contexts.

¶ 17. The series of cases addressing multiplicity of sexual assault charges is instructive. *See, e.g., Harrell v. State*, 88 Wis. 2d 546, 554, 277 N.W.2d 462 (Ct. App. 1979); *State v. Eisch*, 96 Wis. 2d 25, 27–29, 291 N.W.2d 800 (1980). In those cases, the general question posed was whether the defendant's sexually assaultive course of conduct constituted a single offense or separate and distinct offenses. *See, e.g., Harrell*, 88 Wis. 2d at 570; *Eisch*, 96 Wis. 2d at 34–35.

¶ 18. We choose to discuss one such case as a point of reference for our decision. In *Harrell*, one of the leading cases on the subject, the defendant committed two forcible vaginal intercourses on the same person, at the same location and separated by twenty-five minutes of conversation. *Harrell*, 88 Wis. 2d at 553. We held that

there was a sufficient break in conduct and time between the acts to constitute separate and distinct acts of rape and thus that the two-count charge was not multiplicitous. *Id.* at 564–66. In doing so, we embraced the oft quoted standard courts have used to guide their multiplicity determinations:

> If at the scene of the crime the defendant can be said to have realized that he [or she] has come to a *fork in the road,* and nevertheless decides to *invade a different interest,* then his [or her] successive intentions make him [or her] subject to cumulative punishment, and he [or she] must be treated as accepting that risk, whether he [or she] in fact knows of it or not.

*Id.* at 558 (citation omitted; emphasis added). We explained:

> One should not be allowed to take advantage of the fact that he [or she] has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed. Each act is a further denigration of the victim's integrity and a further danger to the victim.

*Id.* at 565. We then identified seven factors to aid in the determination of whether the defendant had come to a "fork in the road": (1) nature of the act, (2) time, (3) place, (4) intent, (5) cumulative punishment, (6) muscular contraction, and (7) number of victims. *See id.* at 572.

¶ 19. Applying the standard to the case, we reasoned that after the first act of forcible sexual intercourse, the defendant had come to the proverbial fork in the road and then engaged in a new and distinct volitional act when he chose to commit the second forcible assault. *See id.* at 565–66, 574. Accordingly, we

held that the separate acts of sexual assault were separately punishable. *Id.* at 564.

¶ 20. Although most often applied in sexual assault prosecutions, the above principles have been applied to several different types of prosecutions. *See City of Madison v. Nickel*, 66 Wis. 2d 71, 223 N.W.2d 865 (1974) (charging a defendant with four violations of a city ordinance prohibiting the selling of obscene magazines is not multiplicitous even though the magazines were sold by the defendant at the same time and place to the same person); *see also State v. Anderson*, 219 Wis. 2d 739, 580 N.W.2d 329 (1998) (conviction on two counts of bail jumping is not multiplicitous when each is based on a violation of a different term of defendant's bond for the underlying crime). The principles were recently reaffirmed in *State v. Koller*, 2001 WI App 253, ¶ 31, 248 Wis. 2d 259, 635 N.W.2d 838, *modified by State v. Schaefer*, 2003 WI App 164, ¶¶ 46, 47, 52, 266 Wis. 2d 719, 668 N.W.2d 760.

> [Determining whether acts are sufficiently different in fact to warrant multiple charges] involves a determination of whether the charged acts are "separated in time or are of a significantly different nature." The "different nature" inquiry is not limited to an assessment of whether the acts are different types of acts. Rather, even the same types of acts are different in nature "if each requires 'a new volitional departure in the defendant's course of conduct.'" Furthermore, time is an important factor, but even a brief time separating acts may be sufficient . . . . The pertinent time question is whether the facts indicate the defendant had "sufficient time for reflection between the . . . acts to again commit himself [or herself]." (Citations omitted.)

*See also State v. McKinnie,* 2002 WI App 82, ¶¶ 6–7, 252 Wis. 2d 172, 642 N.W.2d 617, *review denied,* 2002 WI 111, 256 Wis. 2d 65, 650 N.W.2d 841 (WI July 26, 2002) (No. 01–2764–CR).

¶ 21. The reasoning in *Harrell* and the other cases easily translates to our discussion of what constitutes a sanctionable "incident" or, as we have defined it, "an occurrence of an action or situation felt as a separate unit of experience." As we noted earlier, the purpose of the statute permitting sanctions is not to punish a juvenile but to impress upon him or her the importance of making proper life decisions. Thus, each time the juvenile has an opportunity to reflect and make a life decision or, in other words, has "come to a fork in the road," the statute dictates that he or she should be held accountable for whatever course of conduct he or she elects to pursue. Accordingly, as *Harrell* and other cases have taught us—albeit in different contexts—the proper question to ask when determining whether a juvenile's conduct constitutes separate "incidents," or separate units of experience permitting multiple sanctions, or a continuous "incident," or a single unit of experience permitting only one sanction, is whether the juvenile came to a "fork in the road" and nevertheless "invade[d] a different interest." This means we must determine whether the juvenile's course of conduct is marked by different and distinct volitional acts in between which the juvenile had sufficient time to reflect and choose to commit himself or herself to a particular act.

¶ 22. If the juvenile comes to the "fork in the road" and his or her intent is to "invade a different interest," the juvenile has ended one incident and begun another and the juvenile may be additionally sanctioned for a subsequent condition violation. On the other hand, if

the juvenile comes to the "fork in the road" and does not intend to "invade a different interest," the incident is still ongoing and all subsequent condition violations are incidental to or are part and parcel of that same incident and only one sanction is permitted.

¶ 23. As the State points out, this case is complicated by the fact that Ellis did not just run away once, he ran away three separate times and failed to appear for community service during one of those times and failed to meet with his social worker during another. As *Harrell* teaches us, "time" and "place" are important factors to consider when determining whether a juvenile has come to a "fork in the road." For this reason we could easily say that each time Ellis ran away, he came to a "fork in the road" and then "invade[d] a different interest" when he chose to run away for the second time and ignore his community service requirement and then again when he chose to run away for the third time and skip his meeting with his social worker.

¶ 24. However, the State filed one petition for all three instances of running away under a single umbrella—"foster home violations." In the petition, the State recommended a single sanction of ten days' secured detention for all foster home violations. Thus, the State clearly viewed all three occasions that he ran away as part and parcel of the same "incident." Had the State separated the foster home violation petition into three separate petitions—one for each time Ellis ran away—the outcome of this case might have been different. However, we must render our determination based on the facts of the case as they come before us. Therefore, because all three instances Ellis ran away are subsumed into one petition, we must consider Ellis as

having come to only one "fork in the road" and therefore his three acts of running away as part and parcel of a single act of running away.

¶ 25. We are then faced with the question of whether Ellis' failure to report for community service and his failure to meet with his social worker are separate incidents from his single act of running away. We agree with Ellis that common sense dictates that his act of running away meant that he did not intend to submit to any authority, whether it be his foster parents, his social worker or the agency supervising his community service. While he did violate different conditions when he missed his appointment with his social worker and did not appear for community service, these two violations simply do not evidence a volitional departure in Ellis' course of conduct and an intent to "invade a different interest." Rather, they are a reflection of his flight from and refusal to submit to authority. Ellis' running away, his failure to meet with his social worker and to report for community service therefore are a single incident sanctionable by only ten days' secured detention.[2]

---

[2] Although the parties do not present arguments concerning Ellis' truancy, his failure to meet with his part-time employer and his dirty urinalysis, and the record on these violations is scarce, we choose to briefly address them. Unlike Ellis' failure to meet with his social worker and his failure to comply with the community service requirement, these three condition violations are not incidental to his running away. Ellis could choose not to run away and still choose to be truant from school, to use drugs and to discontinue his part-time employment. These condition violations reflect a decision by Ellis to invade a different interest and therefore Ellis properly received separate sanctions for these condition violations.

¶ 26. For all of the above reasons, we reverse the order of the juvenile court imposing twenty days of sanctions for failing to meet with his social worker and failing to report for community service. We remand with directions that such sanctions be expunged from the order.

*By the Court*.—Order reversed and cause remanded with directions.