GUNDRUM, J.[1]
¶1 D.L.L. appeals from the juvenile court's order denying his motion for reconsideration. For the following reasons, we reverse and remand for further proceedings.
Background
¶2 Based upon D.L.L.'s plea as a delinquent to two counts of misdemeanor theft, the juvenile court entered a dispositional order on November 6, 2017, ordering inter alia that D.L.L. remain in his mother's home. D.L.L. ran away the day before Thanksgiving, November 22, and did not return home until the following Monday, November 27.
¶3 On December 1, the State filed a motion requesting that the court impose sanctions on D.L.L. and treat each of the six days he was absent as a separate violation. The State reiterated this position at a hearing before the juvenile court that same date. Questioned by the court at the hearing, D.L.L.'s mother stated that D.L.L. had remained at his friend's house and the friend's mother had kept D.L.L.'s mother apprised of D.L.L.'s status during the November 22 through November 27 time frame. In a deal with the State, D.L.L., by his counsel, stipulated to three of the six charged violations. The court found three violations and ordered sanctions on each.[2]
¶4 Citing our decision in State v. Ellis H. , 2004 WI App 123, 274 Wis. 2d 703, 684 N.W.2d 157, D.L.L. moved for reconsideration, arguing "the Court erred when it ruled 3 separate incidents occurred when [D.L.L.] ran away from home a single time" and that his "runaway behavior only constitutes a single incident under Wisconsin law." In its response, the State insisted, also relying on Ellis , that D.L.L. could be sanctioned for three separate violations. The juvenile court agreed with the State and denied the motion for reconsideration. The court twice noted that D.L.L. had stipulated to the three violations and more substantively determined that each day D.L.L. woke up and chose not to go home constituted a separate violation, adding, without explanation, that this ruling was consistent with Ellis and the purpose of the applicable statute, WIS. STAT. § 938.355(6)(d). D.L.L. appeals.
Discussion
¶5 As the juvenile court noted, D.L.L., by his counsel, stipulated to three violations. Because of this, we can envision multiple ways in which the State may have prevailed in this appeal with properly made and preserved procedural arguments. Before the juvenile court and before us, however, it has made no such arguments, but instead only addresses the merits based upon our decision in Ellis .[3] Thus, we resolve this appeal based upon how the parties have argued it to us-seeking a substantive ruling based upon the facts of this case and our decision in Ellis .
¶6 In this appeal, we must apply the language of WIS. STAT. § 938.355(6)(d) to the undisputed facts of this case, which is a matter of law we review de novo. See Thomas Y. v. St. Croix Cty. , 175 Wis. 2d 222, 227, 499 N.W.2d 218 (Ct. App. 1993). Section 938.355(6)(d) provides:
If the court finds by a preponderance of the evidence that the juvenile has violated a condition of his or her dispositional order, the court may order any of the following sanctions as a consequence for any incident in which the juvenile has violated one or more conditions of his or her dispositional order[.]
(Emphasis added.)
¶7 The juvenile in Ellis violated a condition of his supervision when he ran away from his foster home on two separate occasions-from May 23 through May 27 and May 30 through June 11-and from Shelter Care from June 14 through June 22. Ellis , 274 Wis. 2d 703, ¶3. During his second absence, he failed to report for community service on June 9 as he had been ordered to do, and during his third absence, he failed to report for a weekly appointment with his social worker during "the week of June 15." Id. , ¶¶1-3, 16. As relevant here, Ellis' social worker sought three separate sanctions related to these matters, one for the three periods of absence combined, another for failing to report for the community service, and another for failing to report for his appointment with the social worker. Id. , ¶3.
¶8 We determined on appeal that the plain language of WIS. STAT. § 938.355(6)(d)"recognizes that multiple conditions may be violated in any one incident but only allows one sanction per incident, not per condition violation." Ellis , 274 Wis. 2d 703, ¶7. In saying so, we noted that the legislature made "the public policy choice that a sanction should not be perceived as punishment, but as a tool to coerce a recalcitrant child to comply with the conditions stated in the dispositional order." Id ., ¶9.
¶9 The State in Ellis had argued that running away from the foster home, failing to report to the social worker, and failing to report for community service constituted three separate "incidents" under WIS. STAT. § 938.355(6)(d), because, as we stated the State's position, "each involved a separate choice by Ellis made on a different date ," and therefore three separate sanctions could be imposed. Ellis , 274 Wis. 2d 703, ¶¶11-12 (emphasis added). Looking to dictionaries, we determined that the appropriate definition of "incident" in this statute is "an occurrence of an action or situation felt as a separate unit of experience." Id. , ¶¶13, 15 (citation omitted). We stated that
[i]f the juvenile comes to the "fork in the road" and his or her intent is to "invade a different interest," the juvenile has ended one incident and begun another and the juvenile may be additionally sanctioned for a subsequent condition violation. On the other hand, if the juvenile comes to the "fork in the road" and does not intend to "invade a different interest," the incident is still ongoing and all subsequent condition violations are incidental to or are part and parcel of that same incident and only one sanction is permitted.
Id. , ¶22. We noted that " 'time' and 'place' are important factors to consider when determining whether a juvenile has come to a 'fork in the road.' " Id. , ¶23.
¶10 We concluded that Ellis' failure to report to his social worker and for community service were not incidents separate "from his single act of running away." Id. , ¶25. We expressed that "common sense dictates that his [single] act of running away meant that he did not intend to submit to any authority, whether it be his foster parents, his social worker or the agency supervising his community service."Id. We added:
While he did violate different conditions when he missed his appointment with his social worker and did not appear for community service, these two violations simply do not evidence a volitional departure in Ellis' course of conduct and an intent to "invade a different interest." Rather, they are a reflection of his flight from and refusal to submit to authority. Ellis' running away, his failure to meet with his social worker and to report for community service therefore are a single incident [allowing for only one sanction].
Id.
¶11 The State in the case now before us notes that in its motion for sanctions it alleged a separate violation for each of the six days D.L.L. was absent from home, and it writes in its appeal that in Ellis "the court pointed out that the decision may have had a different outcome had the State separated its violation into one per date ." (Emphasis added.) This is what the State said in its briefing before the juvenile court and before us, but it is not what we said in Ellis . Rather, we stated in that case that we "could easily say that each time Ellis ran away , he came to a 'fork in the road' and then 'invade[d] a different interest' " but the State instead chose to file
one petition for all three instances of running away under a single umbrella-"foster home violations." .... Thus, the State clearly viewed all three occasions that he ran away as part and parcel of the same "incident." Had the State separated the foster home violation petition into three separate petitions-one for each time Ellis ran away -the outcome of this case might have been different. However, we must render our determination based on the facts of the case as they come before us. Therefore, because all three instances Ellis ran away are subsumed into one petition, we must consider Ellis as having come to only one "fork in the road" and therefore his three acts of running away as part and parcel of a single act of running away.
Id. , ¶¶23-24 (emphasis added). Thus, we signaled we likely would view as separate incidents a circumstance where a juvenile ran away from home multiple times/occasions/instances but returned home for some period of time before each new departure, not, as the State suggests, that we would consider as a separate violation/incident each day a juvenile remained away from home during a single, continuous period of runaway absence. We spoke about each new departure from home or the Shelter Care as a singular "time"/"occasion"/"instance"/"act" even though Ellis was absent from home for multiple days during each of those instances. See id.
¶12 An important observation for the case now before us is that in Ellis we did not even view Ellis' failure to report for community service as a separate "incident" from his running away from home even though those were violations of two separate conditions. For example, Ellis ran away from home the second time on May 30 and did not return until June 11 and his community service report date was June 9-a separate date from the date he ran away, the date he returned, and every other date he was in runaway status except for June 9. The same holds for Ellis' running away from Shelter Care on June 14 and returning on June 22 but failing to report to his social worker "during the week of June 15." Instead, we considered Ellis' "act of running away" as "mean[ing] that he did not intend to submit to any authority, whether it be his foster parents, his social worker or the agency supervising his community service."Id. , ¶25. If, as we held, Ellis' failure to report for community service and to his social worker did not even "evidence a volitional departure in Ellis' course of conduct and an intent to 'invade a different interest' " from running away from home, but instead constituted merely "a reflection of his flight from and refusal to submit to authority," we fail to see how each separate day that D.L.L. was absent from home during a single, continuous period of time could be viewed as "a volitional departure in [D.L.L.'s] course of conduct and an intent to 'invade a different interest.' " See id. Based upon our holding in Ellis , we are compelled to hold here that D.L.L.'s absence from home for the single, continuous period of six days could only be sanctioned as one incident.[4]
¶13 For the foregoing reasons, we reverse the order of the juvenile court denying D.L.L. reconsideration of its order imposing three separate sanctions for D.L.L.'s single, continuous incident of running away. We remand with directions that the court vacate the December 1, 2017 sanction order and enter an amended sanction order finding only one violation-the first violation-and listing its corresponding sanction-ten days' placement in juvenile detention with six days stayed.
By the Court. -Order reversed and cause remanded with directions.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The juvenile court ordered:
3 violations found-1st violation; serve 4 days, 6 stayed-2nd violation; 30 days ELM [electronic monitoring], serve 16 ELM with 14 stayed-3rd violation; 10 days stayed detention. Juvenile entitled to 1 day credit and shall be released from detention on December 4, 2017 to attend school. ELM begins on 12/04/17 by end of business day. ELM ends 12/20/17.

In five sentences, the State also asserts that D.L.L.'s appeal is moot because D.L.L. is no longer subject to juvenile court supervision. As D.L.L. points out, the State fails to develop an argument on this point supported by citation to legal authority. Thus, we do not consider the State's mootness assertion. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered.").

The State directs us to three of our unpublished decisions from the 1990s for their "persuasive value." We direct the State to Wis. Stat. Rule 809.23(3)(b) and caution it against such citations in the future.