In the INTEREST OF DIONICIA M.,
a person under the age of 17:

STATE of Wisconsin,
Petitioner-Respondent,

v.

DIONICIA M.,
Respondent-Appellant.

Court of Appeals

*No. 2009AP3109. Submitted on briefs August 3, 2010.
—Decided August 24, 2010.*

2010 WI App 134

(Also reported in 791 N.W.2d 236.)

526

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. PETERSON, J. Dionicia M. appeals a dispositional order finding her delinquent following her no contest plea to misdemeanor battery as a party to a crime. Dionicia contends the juvenile court erred when it failed to suppress inadmissible statements she made to police and when it denied her credit for predisposition time in secure detention. We agree on both points and reverse.

## BACKGROUND

¶ 2. On October 15, 2008, Peter Kraeger, a Green Bay Police Department truancy officer, received a request to locate Dionicia and return her to Southwest High School. Kraeger found Dionicia about a half block from school. He asked her to get into the back seat of his squad car so that he could take her back to school, and she complied. Because the back doors of the squad car were locked, Dionicia was not able to open the doors and get out.

¶ 3. Kraeger had previously heard from another officer that Dionicia was a possible suspect in a battery

case. During the transport back to school, Kraeger asked Dionicia whether she had been involved in the battery. Dionicia replied that she had been involved. Kraeger then asked Dionicia whether she would be willing to give a statement about her involvement in the battery, and she agreed to do so. The conversation in the squad car was not recorded.

¶ 4. Kraeger brought Dionicia into an office at Southwest High School. He estimated about five to ten minutes elapsed between the time he initially stopped Dionicia and the time they arrived at the office. In the office, Kraeger turned on a recording device, read Dionicia her *Miranda*[1] rights, and continued questioning her about her involvement in the battery. Kraeger then prepared a written statement, which Dionicia signed.

¶ 5. The district attorney subsequently filed a petition alleging substantial battery. Dionicia moved to suppress both her oral and written statements to Kraeger, arguing the statements were involuntary and were taken in violation of *State v. Jerrell C.J.*, 2005 WI 105, 283 Wis. 2d 145, 699 N.W.2d 110, and *Miranda*. The juvenile court denied the suppression motion. It found Dionicia's statements were voluntary and held that failure to record the initial interrogation was not a "substantial violation" of *Jerrell C.J.* The court did not explicitly address Dionicia's *Miranda* argument.

¶ 6. Dionicia entered a no contest plea to an amended petition charging misdemeanor battery as a party to a crime. She was adjudicated delinquent, and as relevant here, ordered to spend thirty days in secure detention. During the pendency of the case, Dionicia had been placed in shelter care. She failed to return to

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

shelter care on the evening of March 5, 2009. As a result, she was placed in secure detention from March 6 to March 10. Therefore, she requested credit for five days applied to the thirty-day secure detention order. The juvenile court denied her request.

## DISCUSSION

### I. Dionicia's statements to Kraeger

■

¶ 7.  Dionicia argues the juvenile court should have suppressed her statements because they were obtained contrary to *Jerrell C.J.* and *Miranda.* A juvenile court's decision on suppression presents a mixed question of fact and law. *See Jerrell C.J.,* 283 Wis. 2d 145, ¶ 16. When reviewing a motion to suppress, we will uphold the juvenile court's findings of fact unless clearly erroneous. *State v. Torkelson,* 2007 WI App 272, ¶ 11, 306 Wis. 2d 673, 743 N.W.2d 511. However, the application of the law to those facts presents a question of law subject to independent appellate review. *Jerrell C.J.,* 283 Wis. 2d 145, ¶ 16. Applying this standard, we conclude Dionicia's statements were taken in violation of *Jerrell C.J.* Therefore, it is unnecessary to address Dionicia's *Miranda* argument.

■

¶ 8.  In *Jerrell C.J.,* our supreme court announced a bright-line rule requiring all custodial interrogations of juveniles to be electronically recorded where feasible to be admissible. *Id.,* ¶ 3. Thus, to determine whether *Jerrell C.J.* mandates suppression of Dionicia's statements, we must consider first whether the interrogation in the squad car was custodial and second whether it would have been feasible to record that interrogation.

¶ 9.   A suspect is in custody whenever he or she is "deprived of . . . freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The test for custody is objective. The court asks whether, considering the totality of the circumstances, a reasonable person in the suspect's position would have felt free to leave. *State v. Pounds*, 176 Wis. 2d 315, 321–22, 500 N.W.2d 373 (Ct. App. 1993).

■

¶ 10.   The juvenile court concluded that Dionicia was in custody while in the back seat of Kraeger's patrol car, and we agree. Kraeger sought out Dionicia at the school's request because she was truant. He told her he intended to take her back to school, and he directed her to the locked back seat of his patrol car. Once she was in the locked car, he questioned her about her involvement in a crime. A reasonable person, particularly a fifteen-year-old, would not feel free to leave the back of a patrol car under these circumstances. From the time Dionicia entered Kraeger's patrol car, she was in custody.

■

¶ 11.   The State argues Dionicia was not in custody because the degree of restraint was minimal, because she was not handcuffed or frisked, and because Kraeger never drew his weapon or made any show of force. While these facts are relevant, they are not required to occur in order for a person to be in custody. *See Torkelson*, 306 Wis. 2d 673, ¶ 18.

¶ 12.   Having determined that Dionicia was in custody, we must consider whether it would have been feasible for Kraeger to record her statements. *Jerrell C.J.* does not define "feasible." However, Webster's Dictionary gives some guidance, defining "feasible" as "ca-

pable of being done or carried out." WEBSTER'S NEW COLLEGIATE DICTIONARY 419 (1977).

■

¶ 13.  We conclude it was "feasible" for Kraeger to record his initial interrogation of Dionicia. Kraeger was only half a block from the school when he located Dionicia. Only five to ten minutes elapsed between the time he took her into custody and the time they arrived at the school office, which contained recording equipment. Kraeger could easily have refrained from questioning Dionicia about her involvement in the battery until after they arrived at school. Had Kraeger waited the five to ten minutes before questioning Dionicia, recording the entire interrogation would have been "capable of being done or carried out."

¶ 14.  Contrary to the State's argument, the mere fact that Kraeger did not have a recording device in his squad car did not make it unfeasible for him to record the interrogation. "Feasible" in this context is not a synonym for "effortless." Although Kraeger may not have been capable of recording the initial conversation while in the squad car, nothing prevented him from waiting to question Dionicia until after the short time it took to return to school. As Dionicia points out, if the police are excused from complying with *Jerrell C.J.* whenever the slightest effort is required to record an interrogation, the *Jerrell C.J.* rule becomes meaningless.

¶ 15.  The juvenile court appears to have treated *Jerrell C.J.* as a balancing test. It examined the record for signs of coercion, determined that "there was not a significant amount, if any, of undue pressure placed on Dionicia," and therefore concluded that the *Jerrell C.J.* violation was not "substantial." However, *Jerrell C.J.* specifically notes that it is difficult or impossible to

532

determine how much pressure law enforcement has placed on a juvenile suspect when there is no recording of the interrogation. *See id.*, ¶ 55. *Jerrell C.J.* sets forth a bright-line rule that custodial interrogations of juveniles must be recorded when feasible.

█

¶ 16. The State argues that even if Dionicia's statement in the squad car is suppressed, her later statement at the school should not be suppressed because it was recorded. However, we conclude *Jerrell C.J.* does not allow the admission of partially recorded interrogations of juveniles. As Dionicia points out, a major purpose of the *Jerrell C.J.* rule is to avoid involuntary, coerced confessions by documenting the circumstances in which a juvenile has been persuaded to give a statement. This purpose is not served by allowing an officer to turn on the recorder only after a juvenile has been convinced to confess. The custodial interrogation of Dionicia, which began in the squad car and continued in the school office, was not recorded in full. Therefore, the juvenile court should have suppressed the interrogation in its entirety.

## II. Credit for pre-disposition time in secure detention

█

¶ 17. Dionicia next argues that Wis. Stat. § 938.34(3)(f)1. (2007–08)[2] entitles her to credit for the five days she spent in secure detention prior to the disposition of her case. The State disagrees but also contends that because Dionicia has already served her time in secure detention, this issue is moot.

---

[2] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

██

¶ 18.   However, an appellate court may choose to decide a moot issue under several circumstances, including when

> the precise situation under consideration arises so frequently that a definitive decision is essential to guide the trial courts; the issue is likely to arise again and should be resolved by the court to avoid uncertainty; or, a question is capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within a time that would result in a practical effect upon the parties.

*G.S. v. State*, 118 Wis. 2d 803, 805, 348 N.W.2d 181 (1984) (citing *State ex rel. La Crosse Tribune v. Circuit Court*, 115 Wis. 2d 220, 228, 340 N.W.2d 460 (1983)). We agree with Dionicia that the application of Wis. Stat. § 938.34(3)(f)1. to her situation meets these criteria. Only one published case has dealt with the statute, *see State v. Richard J.D.*, 2006 WI App 242, 297 Wis. 2d 20, 724 N.W.2d 665, leaving juvenile courts without sufficient guidance on the meaning and application of the law. The State contends this dearth of case law indicates that Dionicia's situation is rare and unlikely to repeat itself. However, we find it at least as likely that, since most juvenile orders last less than one year, the appellate process often cannot be completed within a time that would result in a practical effect on an individual juvenile.

██

¶ 19.   As part of its dispositional order, a juvenile court may place a juvenile in a secure detention facility for up to thirty days. Wis. Stat. § 938.34(3)(f)1. However, a juvenile is entitled to credit for time previously spent in secure detention provided the time was "in

connection with the course of conduct for which the detention . . . was imposed." *Id.* The parties agree on the historical facts resulting in Dionicia's confinement in secure detention. They disagree only as to whether Dionicia's pre-disposition secure detention was "in connection with" the underlying battery offense. Thus, the only disputed issue is the proper construction of § 938.34(3)(f)1. and its application to undisputed facts. This is a question of law that we review independently. *See State v. Lange,* 2003 WI App 2, ¶ 41, 259 Wis. 2d 774, 656 N.W.2d 480.

¶ 20. The adult sentence credit statute uses the identical phrase "in connection with the course of conduct." *See* Wis. Stat. § 973.155(1)(a). For example, take the case of an adult who is arrested for battery and released on a signature bond with a no-drink condition. The adult violates the condition and the bond is revoked and changed to a cash bail which the adult cannot meet for five days. There can be no dispute that the adult will receive sentence credit for those five days. *See* Wis. Stat. § 973.155(1)(a). Without the underlying battery charge, there would be no legal authority to take the defendant into custody for violating the no-drink condition of the bond. The custody is therefore connected to the underlying course of conduct, as required by the sentence credit statute.

¶ 21. Dionicia's situation is analogous. Were it not for Dionicia's original course of conduct—the battery—she would not have been placed in shelter care, and there would have been no authority to confine her in secure detention for failing to return to shelter care. Her time in secure detention was therefore connected to the original course of conduct, since that conduct provided the legal authority to detain her. As a result,

Wis. Stat. § 938.34(3)(f)1. entitles Dionicia to credit, just as Wis. Stat. § 973.155(1)(a) entitles an analogous adult defendant to credit.

¶ 22.  The State argues that Dionicia should not be given credit because her conduct was connected to a new delinquent act—violation of the order placing her in shelter care. Wis. Stat. § 946.495. However, a person can commit a new offense, be taken into custody and still be entitled to sentence credit on a pending case if the custody is in connection with the pending case. This is why defense attorneys routinely ask trial courts to convert signature bonds to cash bail when their clients have been arrested on a new charge and remain in custody on the new charge. "They do so precisely because they want to assure sentence credit on both offenses." *State v. Beiersdorf*, 208 Wis. 2d 492, 499 n.2, 561 N.W.2d 749 (Ct. App. 1997).

*By the Court.*—Order reversed and cause remanded.