# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2018AP1497

Complete Title of Case:

IN THE INTEREST OF A. A., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

  PETITIONER-RESPONDENT,

  V.

A. A.,

  RESPONDENT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | February 27, 2020 |
| Submitted on Briefs: | |
| Oral Argument: | August 7, 2019 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of and oral argument by *Colleen Marion*, assistant state public defender, Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Zev Kianovsky*, assistant corporation counsel, *Dodge County Corporation Counsel* of Juneau. |

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Jacob J. Wittwer*, assistant attorney general, and *Joshua L. Kaul*, attorney general.  There was oral argument by *Jacob J. Wittwer*.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 27, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.    2018AP1497** | Cir. Ct. No.  2017JV35 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

---

IN THE INTEREST OF A. A., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

A. A.,

    RESPONDENT-APPELLANT.

---

       APPEAL from orders of the circuit court for Dodge County: STEVEN G. BAUER, Judge. *Modified and, as modified, affirmed*.

       Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

¶1      BLANCHARD, J.[1]    This case involves the interpretation of the phrase "not more than 10 days" in WIS. STAT. § 938.355(6)(d)1.  This provision sets the maximum length for a nonsecure custody sanction that a circuit court may impose on a juvenile who has violated a dispositional order.  A.A. challenges one aspect of the order imposing a sanction on him and the circuit court's subsequent decision reaffirming the length of the sanction.  Specifically, he challenges the court's decisions to extend his placement from January 16, 2018, to January 26, 2018, arguing that the court should have set January 25, 2018, as the end date.  That is, A.A. contends that the sanction as ordered exceeded the "not more than 10 days" allowed under § 938.355(6)(d)1. because it included 10 days plus part of an 11th day, when "day" is understood to mean a calendar day.  In contrast, the State argues that the length of the sanction was proper because it did not exceed 240 hours (*i.e.*, 10 consecutive 24-hour periods), because "day" in this context means 24 consecutive hours.

¶2      We agree with A.A. that the word "day" in WIS. STAT. § 938.355(6)(d)1. means a calendar day and not a series of hours.  We interpret the statute this way in light of the general common law rule that fractions of days are not recognized when a time period is framed in terms of "days" in the circumstances present here.  Under the common law rule, neither a juvenile's entering custody nor being released are events tied to a particular hour or minute of a day.  These events are deemed to have occurred on the first and last days of the sanction.

---

[1]  On the court's own motion this appeal was converted from a one-judge appeal to a three-judge appeal under WIS. STAT. RULE 809.41(3) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶3    We also briefly address the circuit court's application of WIS. STAT. § 990.001(4) to resolve the issue here and conclude that § 990.001(4) does not apply in this context.  Accordingly, we modify the sanctions order so that the end date is shown as January 25, 2018, and affirm the order as modified.[2]

## BACKGROUND

¶4    In December 2017, the circuit court entered an order finding A.A. to be a juvenile in need of protection or services based on habitual truancy.  *See* WIS. STAT. §§ 938.13(6), 938.345(1).  This order placed A.A. on supervision for one year and imposed conditions that A.A. had to follow to avoid sanctions.  *See* WIS. STAT. §§ 938.34(2), 938.345(1), 938.355(2)(b)7.  A.A. does not challenge this order.

¶5    In January 2018, A.A.'s social worker requested sanctions based on an allegation that A.A. violated supervision rules.  *See* WIS. STAT. § 938.355(6m)(b).  The motion requested a sanction of placement in nonsecure custody for 10 days.  The court held a hearing on the motion on January 16, 2018.

¶6    Both at the hearing and in subsequent written submissions, the parties contested only one issue, namely how to properly determine the final day of a

---

[2] Both sides acknowledge that this appeal is moot because A.A. has completed his court-ordered placement.  *See* ***State v. Morford***, 2004 WI 5, ¶6, 268 Wis. 2d 300, 674 N.W.2d 349 (issue moot where determination of the issue has no practical effect on parties).  However, we agree with the parties that the issue of how to count days in this context is "'capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within a time that would result in a practical effect upon the parties.'" *See* ***State v. Dionicia M.***, 2010 WI App 134, ¶¶18-19, 329 Wis. 2d 524, 791 N.W.2d 236 (quoted source omitted) (construing a statute dealing with juvenile sentence credit in the Juvenile Justice Code despite mootness).  Further, as the State notes, this is an issue of great public importance because WIS. STAT. § 938.355(6)(d)1. establishes the maximum length of time that a juvenile may have his or her liberty deprived through nonsecure custody.

maximum period of custody. A.A. argued that the circuit court should interpret "days" under WIS. STAT. § 938.355(6)(d)1., consistent with *State v. Johnson*, 2018 WI App 2, 379 Wis. 2d 684, 906 N.W.2d 704. *Johnson* holds that any part of a calendar day that a defendant in a criminal case spends in custody counts as a whole day of sentence credit. *Id.*, ¶8. A.A. argued that, under the logic of *Johnson*, the sanction here was 11 "days" long, not the maximum of 10 days allowed under § 938.355(6)(d)1. Corporation counsel for Dodge County argued that *Johnson* is distinguishable, because the instant case does not involve the juvenile equivalent of the criminal sentence credit at issue in *Johnson*.[3]

¶7    The circuit court imposed a sanction of nonsecure custody, setting it to begin on January 16 (the day of the hearing) and end on January 26, concluding that this was a proper 10-day sanction. The court agreed with the County that *Johnson* is distinguishable. The court turned to a different statute and determined

---

[3] We pause to explain why this opinion interprets the language of WIS. STAT. § 938.355(6)(d)1., even though the proper statute for imposing sanctions for the violation of a dispositional order based on habitual truancy is § 938.355(6m) ("Sanctions for violation of order: truancy or habitual truancy"), and not § 938.355(6) ("Sanctions for violation of order"). *See* WIS. STAT. § 938.13 (defining grounds for finding a juvenile to be in need of protection or services, including habitual truancy under § 938.13(6)); § 938.355(6)(a)2. (sanctions under § 938.355(6)(d) available for "juvenile who has been found to be in need of protection or services under" § 938.13(4), (6m), (7), (12), or (14)); § 938.355(6m)(a) (sanctions under § 938.355(6m)(a) available for "juvenile who has been found … in need of protection or services under" § 938.13(6)).

On appeal, the parties focus their arguments on the more generally oriented sanction regime in WIS. STAT. § 938.355(6). Significantly, with respect to the sanction of "nonsecure custody" "in a juvenile detention facility or juvenile portion of a county jail," the pertinent language in the separate dispositional order sanctions regimes is identical. *Compare* § 938.355(6)(d)1. *with* § 938.355(6m)(a)1g. This includes the limitation that the sanction may last "not more than 10 days" and the requirement that juveniles be given detention credit for "time" spent in secure custody while awaiting a hearing on alleged dispositional order violations. Moreover, as we explain in note 5 *infra*, we do not view the differences in the sanction regimes under subsection (6) and (6m) as a basis to interpret differently their identical language regarding nonsecure custody.

that it applies in this context. *See* WIS. STAT. § 990.001(4) (computation of time limit "for the taking of any proceeding or the doing of an act" excludes the day of the event from which the time limit is measured). The court deemed the release of A.A. from custody within the sanction period to be the "doing of an act" under § 990.001(4), and accordingly in counting the 10 days excluded the first day of the sanction, January 16.

¶8 There is no dispute that A.A.'s period of nonsecure placement began and ended as ordered by the circuit court.[4] The parties agree that the record does not establish the time of day on January 16 that A.A. began serving the sanction, nor the time of day when he was released on January 26.

¶9 A.A. appeals, challenging only the final date shown on the sanctions order.

## DISCUSSION

¶10 We first address the parties' dispute over the meaning of "not more than 10 days" in WIS. STAT. § 938.355(6)(d)1., and then address the potential applicability of WIS. STAT. § 990.001(4) in this context.

¶11 The interpretation and application of statutes to an undisputed set of facts present questions of law, which we review independently. *See **State v. Dylan S.***, 2012 WI App 25, ¶16, 339 Wis. 2d 442, 813 N.W.2d 229.

---

[4] During the course of the January 16 to January 26 sanction, A.A. was taken into temporary physical custody for a violation. *See* WIS. STAT. § 938.355(6d)(c) ("Short-term detention" for "Violation of protection or services order"). The temporary physical custody was terminated at a hearing on January 23 and A.A. was returned to nonsecure custody to serve the remainder of the previously ordered sanction, with no apparent effect on the end-date of the sanction. Neither party argues that A.A.'s period in physical custody matters to the resolution of the issue in this appeal, and accordingly we address this topic no further.

*Meaning Of "Days" Under WIS. STAT. § 938.355(6)(d)1.*

¶12     To summarize more fully, A.A. interprets the phrase "not more than 10 days" in WIS. STAT. § 938.355(6)(d)1. to mean that the juvenile spends not more than 10 calendar days serving a nonsecure sanction when any part of a calendar day served counts as a full day. Under A.A.'s calendar-day interpretation, the calendar day on which a juvenile begins serving the sanction and the calendar day on which he or she is released from custody are each counted as one "day," whether the time served on each calendar day is two minutes or 23 hours. Under this interpretation, to avoid exceeding the "not more than 10 days" limitation, the sanction must end before midnight on the 10th calendar day of custody, which is the beginning of what would be the 11th calendar day.

¶13     The State argues that "not more than 10 days" means not more than 10 successive intervals of 24 hours. Under this interpretation, a sanction under WIS. STAT. § 938.355(6)(d)1. could last up to 240 hours. Thus, when a 10-day sanction is imposed, the juvenile must be released no later than the same time of day at which the sanction began on the 11th calendar day.

¶14     We apply the following general rules of statutory interpretation. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. If this interpretation approach "'yields a plain, clear statutory meaning, then'" the statute is not ambiguous. *Id.*

6

(quoted source omitted). However, "a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶47.

¶15 Of special note here are the following additional rules of statutory interpretation. The legislature is "presumed to act with full knowledge of existing case law when it enacts a statute" and "[a] statute must be interpreted in light of the common law and the scheme of jurisprudence existing at the time of its enactment." *Strenke v. Hogner*, 2005 WI 25, ¶28, 279 Wis. 2d 52, 694 N.W.2d 296. Statutes are not interpreted in a way that would alter a proposition established in the common law—as would happen if the statute here were interpreted to create an exception to a time convention in the common law—"'unless the legislative purpose to do so is clearly expressed in the language of the statute.'" *See MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc.*, 2012 WI 15, ¶67, 338 Wis. 2d 647, 809 N.W.2d 857 (quoted source omitted); *see also id.*, ¶¶67, 70-71 ("'It is axiomatic that a statute does not abrogate a rule of common law unless the abrogation is clearly expressed and leaves no doubt of the legislature's intent'"; a common law rule that undermines a "statute's manifest purpose … 'leaves no doubt of the legislature's intent'" to abrogate the common law rule. (quoted source omitted)).

¶16 With these standards in mind, we now provide additional background regarding WIS. STAT. § 938.355(6)(d)1. Section § 938.355 concerns disposition orders that circuit courts issue when a juvenile is found to be in need of protection or services. *See* § 938.355(1); *see also* WIS. STAT. §§ 938.34, 938.345(1). Such an order must contain "[a] statement of the conditions with which the juvenile is required to comply" while subject to the order. Sec. 938.355(2)(b)7. Subsections § 938.355(6), (6g), and (6m) define the court's power to impose sanctions on a juvenile who is found to have violated a condition. *See State v. Aaron D.*, 214 Wis. 2d 56, 61-64, 571 N.W.2d 399 (Ct. App. 1997) (discussing each variety of

sanctions). With respect to § 938.355(6), we have described the legislature's intent as "giving credence to the public policy choice that a sanction should not be perceived as punishment, but as a tool to coerce a recalcitrant child to comply with the conditions stated in the dispositional order." *State v. Ellis H.*, 2004 WI App 123, ¶9, 274 Wis. 2d 703, 684 N.W.2d 157.[5]

¶17 Among the potential sanctions available to the circuit court is the following:

> Placement of the juvenile in a juvenile detention facility or juvenile portion of a county jail that meets the standards promulgated by the department of corrections by rule or in a place of nonsecure custody, *for not more than 10 days*[,] and the provision of educational services consistent with his or her current course of study during the period of placement. The juvenile shall be given credit against the period of detention or nonsecure custody imposed under this subdivision for all time spent in secure detention in connection with the course of conduct for which the detention or nonsecure custody was imposed.

WIS. STAT. § 938.355(6)(d)1. (emphasis added).

¶18 We conclude that WIS. STAT. § 938.355(6)(d)1. is ambiguous on the issue here. As we explain below, the well-established sources of plain language meaning—technical or dictionary definitions, context, closely related statutes, and the rule against interpretations that produce unreasonable results—all fail to reveal the legislature's intent regarding the computation of "not more than 10 days" under

---

[5] There are differences between the sanction regimes available under WIS. STAT. § 938.355(6)(d) and § 938.355(6m)(a). *See State v. Aaron D.*, 214 Wis. 2d 56, 66-68, 571 N.W.2d 399 (Ct. App. 1997). However, while these differences reflect an intent to make available to circuit courts a somewhat different array of sanctions for habitually truant juveniles, we see no reason to view the sanctions in (6m)(a) as having a different general purpose from the (6)(d) general purpose of coercing compliance with a dispositional order.

§ 938.355(6)(d)1. Reasonably well-informed persons could understand the statute to contemplate a sanction that could end at the latest by midnight of the 10th calendar day or one that lasts up to 240 hours.[6] Further below, we explain our conclusion that, in the absence of a manifest intent to the contrary, we interpret § 938.355(6)(d)1. in light of the common law rule against recognizing fractions of a day.

¶19 **Technical or dictionary definitions.** We find no statutory definition of "day" or "days" in WIS. STAT. ch. 938. *See* WIS. STAT. § 938.02. Similarly, unlike other units of time, WIS. STAT. § 990.01 ("Construction of laws; words and phrases") does not provide a default meaning of "day" for the interpretation of all statutes. *See* § 990.01(intro), (21), (46), (49) (defining "month," "week," and "year" for situations in which those definitions do not "produce a result inconsistent with the manifest intent of the legislature").

¶20 Turning to dictionary definitions, "day" has multiple ordinary meanings. Neither party disputes that some potentially pertinent definitions support interpreting "days" to be calendar days (A.A.'s position), while others support interpreting "days" to be 24-hour periods (the State's position). Specifically, some definitions of "day" treat it as a 24-hour period, while other definitions more flexibly

---

[6] A 240-hour interpretation provides for an additional potential overnight and part of a day over a 10-calendar-day interpretation. Assume that a circuit court orders a juvenile to serve a "10-day" sanction of nonsecure custody to begin at the conclusion of a hearing that ends at 5:00 p.m., January 16. Under A.A.'s rule, the 7 hours of custody served on the 16th counts as the first day of custody, and the sanction must end with release by midnight, January 25, though release at any point during that day (theoretically as early as 12:01 a.m., January 25) would count as a 10th day of the sanction. Under the State's rule, the sanction could continue beyond the end of the 25th, but no later than 5:00 p.m. on January 26. Thus, under these facts, the maximum sanction under the 240-hour approach could theoretically last as many as 41 hours longer than the maximum sanction under the calendar-day approach.

define "day" as referencing a portion of a 24-hour period.[7] Thus, neither technical nor dictionary definitions support either of the interpretations offered by the parties.

¶21 **Context.** In defining other time periods in the context of dispositional orders under WIS. STAT. § 938.355, the legislature has demonstrated that, when it wants to do so, it can express a clearer intent by breaking down a "day" or "days" into fraction-of-a-day units, specifically hours. It has used "hours," for example, for the measurement of the maximum time that a juvenile may be held in custody before a hearing on the appropriateness of sanctions for violating a disposition order. *See, e.g.*, § 938.355(6d)(c)1. ("not more than 72 hours"). The legislature has demonstrated a similar intent in structuring another sanction available to courts under § 938.355(6)(d). *See* § 938.355(6)(d)4. (court may impose as a sanction "[n]ot more than 25 hours of uncompensated participation in a supervised work program or other community service work"). This contextual point weighs in favor of treating "days" as unitary (not as sets of hours), because the use of "hours" to define some time periods in § 938.355 and "days" to define others could suggest an

---

[7] *See, e.g.*, AMERICAN HERITAGE DICTIONARY, *Day* (https://www.ahdictionary.com/word/search.html?q=day):

> 2.a. The 24-hour period during which the earth completes one rotation on its axis, traditionally measured from midnight to midnight.
>
> ….
>
> 3. One of the numbered 24-hour periods into which a week, month, or year is divided.
>
> 4. The portion of a 24-hour period that is devoted to work, school, or business….
>
> 5. A 24-hour period or a portion of it that is reserved for a certain activity: a day of rest.

intent to use different conventions for time measurement. *See **Dodge Cty. v. Ryan E.M.***, 2002 WI App 71, ¶8, 252 Wis. 2d 490, 642 N.W.2d 592 (rejecting argument equating "72 hours" to "3 days" as "inconsistent with legislative intent").[8] And, more generally, the use of "hours" instead of "days" is a word choice that can have meaningful consequences for time computation. *See **id.***, ¶9 ("when a statute expresses time in fractions of a day, usually hours, it makes no sense to apply" "a mechanism to create a fair, uniform standard for counting days"); WIS. STAT. § 990.001(4)(a) (excluding the whole of Sunday and legal holidays from time periods specifically expressed in hours, unless application of the rule would be inconsistent with the manifest intent of the legislature).

¶22    However, given the relative length of the time periods involved, the different wording may simply reflect a natural tendency to express shorter time frames in terms of hours and longer time frames in terms of days. *Compare* WIS. STAT. § 938.355(6)(d)4., (6d) (including time periods of "not more than" 25 or 72 hours) *with* § 938.355(6)(d)1., 3. (including time periods of "not more than" 10 and 30 days). One does not ordinarily speak in terms of "240-hour" time frames. We are accustomed to seeing references to periods of 24 hours, 48 hours, and 72 hours, but longer than that we are accustomed to use of the word "day."

¶23    The State apparently contends that the legislature would have understood that its 240-hour interpretation better promotes the overall purposes of WIS. STAT. ch. 938, and specifically the purposes of the sanction scheme laid out in WIS. STAT. § 938.355(6). The State's logic is that, because its interpretation creates the potential for a somewhat longer sanction, this maximizes the flexibility for

---

[8] This contextual point applies to habitual truancy sanctions as well. *See* WIS. STAT. § 938.355(6m)(a)1g., 2.-3. (using "days," and "hours" to limit sanctions).

circuit courts in choosing appropriate sanctions. The State argues that the importance of this additional sanction time is heightened because of the relatively short sanction time of 10 days. It is also true that case law explains that the purpose of sanctions under § 938.355(6) is to provide flexibility for courts in compelling compliance with disposition orders. *See Ellis H.*, 274 Wis. 2d 703, ¶9. However, the legislature has provided this flexibility in the form of limited sanctions of finite duration. In clarifying where that limit has been set under § 938.355(6)(d)1., we do not discern a basis to conclude that the additional detention time would meaningfully add to a circuit court's ability to coerce compliance with disposition orders.

¶24 The State may also mean to point to the context provided by WIS. STAT. § 938.01(2) regarding the purposes of ch. 938 as a whole, arguing that erring on the side of potentially longer maximum sanctions better advances these purposes. However, again here we do not discern a suggestion from that wider context that the legislature valued the additional possible overnight offered by a 240-hour sanction over a 10-calendar-day sanction. For example, the State does not point to any of the purposes of the juvenile code explicitly articulated in WIS. STAT. § 938.01(2) ("Legislative Intent") as a basis to conclude that the legislature favored a potentially longer maximum sanction under WIS. STAT. § 938.355(6)(d)1. In our review of § 938.01(2), we do not see how the additional time, to use one pertinent example from the statement of intent, "allow[s] the [circuit] court" "to utilize the most effective dispositional option" in order to "respond to a juvenile offender's needs for care and treatment consistent with the prevention of delinquency, each juvenile's best interest and protection of the public." *See* § 938.01(2)(f). Without additional guidance from the text of § 938.355(6)(d) or any closely related statute, we are

unable to say whether additional potential maximum time in detention would better serve the interests of a sanctionable juvenile or the protection of the public.[9]

¶25 **Closely related statutes.** A.A.'s primary argument is based on case law that interprets what he contends is a statute that is closely related to WIS. STAT. § 938.355(6)(d)1. Specifically, A.A contends that § 938.355(6)(d)1. must be interpreted in light of a case interpreting the criminal sentence credit statute, WIS. STAT. § 973.155(1)(a), because the two statutes use similar terms. *See State v. Reyes Fuerte*, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773 ("Statutes are closely related when they are in the same chapter, reference one another, or use similar terms.").[10] A.A. points to *Johnson*, which as we have noted states that § 973.155(1)(a) counts as a day of sentencing credit any calendar day that a criminal defendant spent at least part of the day in custody. *Johnson*, 379 Wis. 2d 684, ¶8. The State counters that *Johnson* is distinguishable, because § 973.155 is similar only to the portion of § 938.355(6)(d)1. that addresses pre-hearing detention credit, and here there is no dispute that A.A. did not earn such credit. The State also argues that even the part of § 938.355(6)(d)1. that is similar to § 973.155(1)(a) has some

---

[9] The State also suggests that there is something significant about the scale of time involved in a 10-day maximum that is more amenable to a 240-hour computation than, for example, a 60-day maximum would be to a 1440-hour computation. In that case, the State concedes it would be more reasonable to use the calendar-day definition. We are not persuaded that there is a difference that matters in determining the meaning of "not more than 10 days" in the statute.

[10] A.A. also asserts that WIS. STAT. § 302.11(1), dealing with the mandatory release of criminal inmates on parole, is a closely related statute. We disagree. Under § 302.11(1), when the department of corrections calculates a date for mandatory release on parole for an inmate entitled to such release, a resulting fraction of a day counts as a whole day in the inmate's favor. Such a rule, if applied to WIS. STAT. § 938.355(6)(d)1. would favor A.A.'s calendar day approach. However, § 302.11(1) is not closely related to § 938.355(6)(d)1. The statutes are not in the same chapter, do not reference one another, and do not use similar terms. *See State v. Reyes Fuerte*, 2017 WI 104, ¶27, 378 Wis. 2d 504, 904 N.W.2d 773.

meaningful differences in word choice that further renders ***Johnson*** inapplicable.[11] While ***Johnson*** confirms that "days" *can* be understood to mean calendar days, we conclude that ***Johnson*** does not assist in the interpretation of § 938.355(6)(d)1.

¶26    Notably, neither ***Johnson***, nor the cases it examined, explained the basis for using a calendar-day approach to counting days under WIS. STAT. § 973.155(1)(a). *See **Johnson***, 379 Wis. 2d 684, ¶¶6-7 (discussing ***State v. Carter***, 2010 WI 77, 327 Wis. 2d 1, 785 N.W.2d 516; ***State v. Elandis Johnson***, 2009 WI 57, 318 Wis. 2d 21, 767 N.W.2d 207; ***State v. Obriecht***, 2015 WI 66, 363 Wis. 2d 816, 867 N.W.2d 387).  Indeed, we stated in ***Johnson*** that what "[n]ormally" would be a "more extensive discussion of the correct interpretation and application" of the sentence credit statute was unnecessary, because our supreme court stated in other cases that partial days of custody count as full days of sentence credit.  *Id.*, ¶5.  We were bound to follow these examples under ***Cook v. Cook***, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).  ***Johnson***, 379 Wis. 2d 684, ¶8.

¶27    Absent a rationale underlying the result in ***Johnson*** or the cases it examined—even setting aside the State's arguments that WIS. STAT. § 973.155(1)(a) has no bearing here—we are unable to say that ***Johnson*** assists in the interpretation of WIS. STAT. § 938.355(6)(d)1.  That is, we are unable to say whether the reasoning behind using the calendar-day approach in calculating the "days" that are served as criminal sentence credit under § 973.155(1)(a) would apply with equal force here.  *See also **Dionicia M.***, 329 Wis. 2d 524, ¶¶1, 6, 17

---

[11] WISCONSIN STAT. § 973.155(1)(a) states that "[a] convicted [criminal] offender shall be given credit toward the service of his or her sentence for all *days* spent in custody in connection with the course of conduct for which sentence was imposed." (Emphasis added.)  To repeat, the pertinent portion of WIS. STAT. § 938.355(6)(d)1. provides that a sanctioned juvenile "shall be given credit against the period of detention or nonsecure custody imposed under this subdivision for all *time* spent in secure detention in connection with the course of conduct for which the detention or nonsecure custody was imposed." (Emphasis added.)

(counting secure detention under WIS. STAT. § 938.34(3)(f)1. "from March 6 to March 10" as "5 days" of detention credit, but with no explanation).

¶28 **Avoiding absurd or unreasonable results.** We pressed the parties at oral argument regarding potential difficulties, possibly foreseeable to the legislature, that may arise for custodians and others directly involved in the implementation of sanction orders under the parties' alternative interpretations of "days." We conclude that such considerations do not render either interpretation absurd or less obviously reasonable than the other. That is, we conclude that the legislature would have anticipated that, under either interpretation, there will sometimes be challenges in the implementation of a maximum sanction. Problems could include: late-night release times; confusion in determining the calendar day or time of day when a juvenile begins "custody"; or calculation issues regarding the precise time for release. These potential difficulties could vary to some degree between the calendar-day and 240-hour approaches, particularly depending on how the amount of "time" spent in pre-hearing custody is computed under WIS. STAT. § 938.355(6)(d)1. for the purposes of detention credit.[12] However, we do not see

_____

[12] For illustrative purposes, the following are some of the possible difficulties presented by each approach addressed by the parties, at times in response to questions at oral argument.

In the case of the calendar-day rule, a juvenile could theoretically be released at any point between the midnight-to-midnight window of the 10th calendar day. An open-ended order for the maximum sanction of "10 days" would place some burden on custodial facilities to determine an appropriate release time within that window, and seemingly give the custodian freedom to release a juvenile at problematic hours of the day. Alternatively, a court could direct that a 10-day sanction end at the last allowable moment, which would put pressure on facilities to release the juvenile precisely at midnight of the last day. Pre-hearing detention credit could also complicate the calendar-day approach. Under the approach in *State v. Johnson*, 2018 WI App 2, 379 Wis. 2d 684, 906 N.W.2d 704, juveniles could receive a "day" of credit if taken into custody at 11:59 p.m. *See* WIS. STAT. § 938.355(6d) (authorizing up to "72 hours" of detention prior to a hearing determining appropriateness of sanctions). If the *Johnson* approach were not followed, it would require the

any of these potential difficulties as a basis to conclude that either the calendar-day or 240-hour approach is problematic or unworkable. Under either interpretation, circuit courts may on occasion exercise discretion in ways that are inconvenient or ambiguous for juveniles, custodians, or both. Or, a court could, in consultation with the juvenile, the juvenile's parents or guardians, or the social workers, exercise its discretion to specify an appropriate release time at some point before the end of the 10th day. In any case, we repeat that, under the interpretation that we adopt today, the release of a juvenile on the 10th day of an unqualified sanction of "10 days" is not referable to any particular part of the day, and a sanction under § 938.355(6)(d)1. may not last beyond midnight at the close of the 10th day.

¶29 In sum, we see no legislative intent in the text of WIS. STAT. § 938.355(6)(d)1., when interpreted as a whole and in context, to construe "not more than 10 days" to unambiguously mean either 10 calendar days or 240 hours. Unsurprisingly, then, we see no legislative intent in the text of § 938.355(6)(d)1. to deviate from the common law rule in support of the calendar day meaning, which we now discuss.[13]

---

sanction-imposing court to make some kind of conversion of pre-hearing detention credit measured in hours so that it could be factored into the "10 days" of post-hearing custody.

In the case of the 240-hour rule, a maximum sanction would end precisely at the conclusion of the 240th hour. A.A. argues that this level of precision may not be feasible for custodial facilities balancing responsibilities for multiple juveniles. Further, depending on how the "time" of pre-hearing detention credit is measured, courts imposing a 240-hour sanction would either need to convert pre-hearing credit from calendar days to hours (following the *Johnson* approach), or measure the time in hours, minutes and seconds, and subtract that time. The latter method could lead to release at hours that present problems for juveniles or for those who care for or otherwise interact with them.

[13] As an alternative to his plain-meaning interpretation, A.A. argues that, if the maximum length of a sanction under WIS. STAT. § 938.355(6)(d)1. is ambiguous, then the rule of lenity should apply in favor of his interpretation. We now briefly address why we do not rely on the rule of

¶30     It is a "venerable principle that the law generally does not recognize fractions of a day." ***Pettygrove v. Pettygrove***, 132 Wis. 2d 456, 464, 393 N.W.2d 116 (Ct. App. 1986) (citing ***Knowlton v. Culver***, 2 Pin. 243, 246 (1849)).   "In general, it is true that, in computing time in respect to the service of papers, the issuing of process, the calculation of interest, the running of statutes, and many other like matters, the fractions of a day will not be considered."[14]   ***Knowlton***, 2 Pin. at 246.   Under this principle, the hour-to-hour timing of events during the course of a calendar day are not inquired into unless doing so is necessary to determine an order of events that affects the rights of parties.   *See* ***Pettygrove***, 132 Wis. 2d at 464.[15] There is no suggestion here that the order of multiple events on a single day matter to the rights of the parties.

---

lenity, even though we conclude that § 938.355(6)(d)1. is ambiguous.   "The rule of lenity 'provides generally that ambiguous penal statutes should be interpreted in favor of the defendant.'"   ***State v. Villamil***, 2017 WI 74, ¶27, 377 Wis. 2d 1, 898 N.W.2d 482 (quoted source omitted).   As A.A. notes, at least some provisions of the Juvenile Justice Code are penal in nature and are therefore construed strictly in the juvenile's favor.   *See* ***State v. David L.W.***, 213 Wis. 2d 277, 279-82, 570 N.W.2d 582 (Ct. App. 1997) (applying strict construction to Serious Juvenile Offender Program provision in WIS. STAT. § 938.34(4h) as a possible disposition for a juvenile adjudicated delinquent).   However, as we have explained above, the purpose of the sanction scheme in § 938.355(6)(d) is not to punish.   *See* ***State v. Ellis H.***, 2004 WI App 123, ¶9, 274 Wis. 2d 703, 684 N.W.2d 157.

[14]   The rule against recognizing fractions of days stated in Wisconsin precedent has deep roots in American jurisprudence.   *See, e.g.*, ***Arnold v. U.S.***, 13 U.S. 104, 107-09 (1815) (discussing English cases; excluding the whole day in which an act of Congress was passed from the act's taking effect rather than taking into account "fractions of a day").   And, as we noted in *Pettygrove*, we are not the only "modern court" to acknowledge the continued vitality of the rule.   ***Pettygrove v. Pettygrove***, 132 Wis. 2d 456, 464, 393 N.W.2d 116 (Ct. App. 1986) (citing ***State Comp. Ins. Fund v. Building Sys., Inc.***, 713 P.2d 940, 941 (Colo. App. 1985).

[15]   For example, in ***Pettygrove***, we determined that it was not error for the circuit court to inquire into the relative timing of the death of a party to a divorce action and the rendering of the divorce judgment, even though those events occurred on the same day, requiring that the court attribute each event to a certain hour of the day.   ***Pettygrove***, 132 Wis. 2d 464-65.   This fit the exception to the general rule against recognizing fractions of a day, because "the central issue" in the case was whether a divorce action had been "abated" by the death of one of the parties, which "fundamentally affected the rights of the parties."   ***Id.***

¶31 The rule against recognizing fractions of a day treats a day as an indivisible unit that is not broken down into a collection of hours or minutes. In other words, the events of the day—such as a juvenile's entering into, or being released from, custody—are not associated with a particular minute or hour. In effect, a fraction of a day in custody is deemed a day, to be included or excluded as an indivisible unit. *See Knowlton*, 2 Pin. at 246 ("in reference to the commencement of suits, in particular, … the precise hour or moment of issuing the process or handing it to the sheriff will not, in ordinary cases, be inquired into").

¶32 Thus, the common law default time convention leads us to the same place as A.A.'s calendar-day approach: any part of any unique calendar day spent in custody is essentially "rounded up" to a "day" of custody. And, we see no ordering of events at the beginning or end of a juvenile's sanction custody that could adversely affect the rights of the State. Based on this approach, the sanction imposed on A.A. here lasted into an 11th calendar day. In sum, then, given the absence of a manifest purpose "clearly expressed" by the legislature to use a different time convention, the general common law rule requires us to interpret "days" in WIS. STAT. § 938.355(6)(d)1., as meaning calendar days. *See MBS-Certified Public Accountants, LLC*, 338 Wis. 2d 647, ¶¶67, 70-71.

¶33 We now explain why the first day of the sanction is not excluded in computing the end-point of A.A.'s 10-day sanction under WIS. STAT. § 990.001(4), as the circuit court here ruled.

*Application of WIS. STAT. § 990.001(4).*

¶34 The parties agree that the circuit court erred in concluding that WIS. STAT. § 990.001(4)(d) applies to the computation of time in WIS. STAT.

18

§ 938.355(6)(d)1. We concur that § 990.001(4)(d) does not apply to the computation of a sanction imposed under § 938.355(6)(d)1.

¶35 Under WIS. STAT. § 990.001(4)(d), "[r]egardless of whether the time limited in any statute for the taking of any proceeding or the doing of an act is measured from an event or from the date or day on which such event occurs, the day on which such event took place shall be excluded in the computation of such time." *See also* § 990.001(4)(a) ("The time within which an act is to be done or proceeding had or taken shall be computed by excluding the first day and including the last").

¶36 Under the circuit court's application of this rule, January 16 (the day A.A.'s sanction began) was the "day on which [the] event occurs," from which the custodian had 10 days to do "the act" of releasing A.A. Thus, the court concluded, January 16 was excluded from computation of the end of the 10th day. Under this approach, a sanction that extended into January 26 did not exceed the 10-day limit.

¶37 The rule for excluding the first day under WIS. STAT. § 990.001(4)(d) does not apply where "construction in accordance" with the rule "would produce a result inconsistent with manifest intent of the legislature." Sec. 990.001(intro). We conclude that excluding the first day of a sanction in computing the length of the sanction would be inconsistent with the manifest intent of the legislature in enacting WIS. STAT. § 938.355(6)(d)1. As noted, the text of § 938.355(6)(d)1. provides that juveniles shall receive detention credit against sanctions imposed for time served "in connection with the course of conduct" leading to the sanction. This demonstrates a legislative intent that courts recognize and take into account all time that a juvenile spends in actual custody in the imposition of the sanction. It would run counter to this intent to apply a time-computation convention that excludes any

day that a juvenile serves part of his or her sanction. There is no dispute that A.A. spent part of January 16 in custody.

¶38    Further, a rule that excludes an entire day from the computation of a sanction is incompatible with the plain language of WIS. STAT. § 938.355(6)(d)1., which contemplates sanctions of *any* length at all, so long as it is less than 10 days, perhaps as short as a few hours. Applying WIS. STAT. § 990.001(4)(d) here would render it functionally impossible for a court to impose a sanction that did not take up most of a day, because any sanction ordered to last only a few hours would not technically begin until the conclusion of the day that custody began. *See Ryan E.M.*, 252 Wis. 2d 490, ¶9 (discussing "logical[ ] incompatib[ility]" of "excluding the first day" "with computing time measured in hours").

¶39    Finally, we question whether the 10-day maximum under WIS. STAT. § 938.355(6)(d)1. describes a period of "time … for … the doing of an act" under WIS. STAT. § 990.001(4)(d). The circuit court here reasoned that the act to be done was the release of A.A. from custody within the time period allowed by statute. It is true that a sanction of 10 days in custody necessarily involves release from custody. But release is not an act to be performed at any point "within" the sanction. Rather, a release is itself the endpoint of a sanction period, and sanctions are explicitly and directly the subject matter of § 938.355(6)(d)1.

## CONCLUSION

¶40    For all of these reasons, we modify the sanctions orders to show the final date as being January 25, 2018, and affirm the orders as modified.

*By the Court*.—Orders modified and, as modified, affirmed.